Orlin GOODE, as independent executor of the Estate of James Emerson Goode, Petitioner,

v.

Mohammad F. SHOUKFEH, M.D., Respondent.

No. 96–0346.

Supreme Court of Texas.

Argued Oct. 22, 1996.

Decided April 18, 1997.

Bruce A. Pauley, Michael S. Box, William A. Newman, Dallas, for Petitioner.

Jim Hund, Lubbbock, R. Brent Cooper, Dallas, for Respondent.

OWEN, Justice.

In this case we review a determination that peremptory challenges were not based on race and consider whether two members of the venire should have been excused for cause. The trial court overruled Petitioner's objections to Respondent's peremptory challenges and also refused to excuse two venire-members for cause. The court of appeals affirmed the trial court's take-nothing judgment. 915 S.W.2d 666. We affirm the judgment of the court of appeals.

I

James Emerson Goode died from complications following knee-replacement surgery performed at Methodist Hospital of Lubbock. Orlin Goode, as independent executor of the estate of James Goode, brought a medical malpractice suit against Mohammad F. Shoukfeh, a cardiologist who treated James Goode for a pulmonary embolism several days after his surgery. The case was tried to a jury, who failed to find Shoukfeh negligent. The trial court rendered judgment on

the verdict, and Goode appealed. The court of appeals affirmed.

Goode's complaints on appeal focus on the selection of the jury. Following voir dire of the prospective jury panel, Shoukfeh peremptorily challenged six veniremembers. Goode, an African–American, objected to four of these challenges as impermissibly motivated by race under *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). The challenged jurors included three African–Americans (jurors 7, 26, and 28) and one Hispanic (juror 9). During voir dire, Goode also alleged that Shoukfeh struck juror 9, a woman, for "gender based reasons." However, Goode has not asserted a claim of gender discrimination in this Court.

The trial court conducted a hearing on Goode's *Edmonson* challenge, which Goode's counsel began by stating that: (1) the four challenged jurors were members of a racial minority; (2) no sufficient, racially neutral reason justified these challenges; and (3) Goode would put forth evidence of his claims if the court so desired. The court declined this offer of evidence and instead called upon Shoukfeh's counsel to reply.

Responding to the court's request, Shoukfeh's counsel offered explanations for striking the four jurors in question. Juror 7 knew and had worked with either James Goode's widow or one of his children. Juror 26 was once a nurse at Methodist Hospital, and Shoukfeh's counsel expressed concern with "the reasons that she left employ there." The objection to juror 28 was that she made an "unequivocal statement ... that she had a problem sitting in judgment" and also that she failed to disclose her prior jury service on her juror information card. Finally, juror 9 was a single mother of four who listed her occupation as "house mother," which counsel for Shoukfeh took to mean unemployed, and Shoukfeh's counsel stated that he was concerned that her service on the jury "would affect her ability to take care of four children." Shoukfeh's counsel also claimed that juror 9 would be "more of a plaintiff's juror" because she appeared to be a welfare recipient.

Following these explanations, Goode requested the opportunity to examine the voir dire notes of opposing counsel and argued that these notes should be admitted into evidence. Goode then requested the opportunity to call witnesses and eventually did call Jim Hund and Bill Moss, Shoukfeh's attorneys. The questioning of Hund and Moss focused on their respective voir dire notes. When asked whether these notes reflected any reliance on race in striking the four jurors in question, Hund invoked the work-product privilege. Moss answered "no" in response to the same question. However, both Hund and Moss asserted the work-product privilege in refusing to disclose their notes to Goode. The trial court sustained the privilege claims and refused to conduct an *in camera* inspection of the notes. The court then overruled Goode's *Edmonson* objections. Goode contends that following Shoukfeh's peremptory challenges, no African–Americans or Hispanics were left on the panel, although the record indicates that two individuals with names of Hispanic origin remained.

Goode contends that Shoukfeh failed to offer race-neutral explanations for his peremptory challenges and that the trial court erred in denying access to counsel's notes, which may have provided concrete evidence that the peremptory challenges were made with racially discriminatory intent.

## II

### A

Goode's challenges to the strikes exercised by Shoukfeh arise under the United States Constitution, as interpreted in decisions of both the United States Supreme Court and this Court. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that a criminal defendant is denied equal protection under the United States Constitution if a prosecutor uses peremptory challenges to exclude members of the jury panel solely on the basis that their race is the same as the defendant's.

The United States Supreme Court has extended the reach of *Batson* to other situations, most notably civil trials. *See Edmon-*

son v. Leesville Concrete Co., 500 U.S. 614, 618–28, 111 S.Ct. 2077, 2081–87, 114 L.Ed.2d 660 (1991). The Court held in *Edmonson* that race-based exclusion of civil jurors violates the equal protection rights of the excluded juror. *Edmonson*, 500 U.S. at 616, 111 S.Ct. at 2080–81. Other extensions of *Batson* include *J.E.B. v. Alabama*, 511 U.S. 127, 130–31, 114 S.Ct. 1419, 1422–23, 128 L.Ed.2d 89 (1994) (prohibiting peremptory challenges based on sex); *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992) (prohibiting criminal defendant's exercise of peremptory challenges in a racially discriminatory manner); and *Powers v. Ohio*, 499 U.S. 400, 406–09, 111 S.Ct. 1364, 1368–70, 113 L.Ed.2d 411 (1991) (prohibiting racially motivated peremptory challenges even when excluded jurors are of a different race than the defendant). As in *Edmonson*, these decisions reflect the Supreme Court's recognition of the equal protection rights of both the excluded jurors and the litigants. *See, e.g., J.E.B.*, 511 U.S. at 140–41, 114 S.Ct. at 1427–28.

In the wake of *Edmonson*, this Court confirmed in *Powers v. Palacios*, 813 S.W.2d 489, 490–91 (Tex.1991), that the use of a peremptory challenge to exclude a juror on the basis of race violates the equal protection rights of the excluded juror. *See also American Chrome & Chems., Inc. v. Benavides*, 907 S.W.2d 516, 517 (Tex.1995) (confirming that this Court follows *Edmonson* but disapproving of language in the opinion of the court of appeals that said "we and the Texas Supreme Court have gone a step further than some jurisdictions").

■ Decisions of the United States Supreme Court have delineated the substantive parameters that govern a *Batson/Edmonson* objection. In two criminal cases, *Hernandez v. New York*, 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395 (1991), and *Purkett v. Elem*, 514 U.S. 764–65, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995), the Supreme Court explained the three-step process utilized in resolving a *Batson* objection to a peremptory challenge. At the first step of the process, the opponent of the peremptory challenge must establish a prima facie

case of racial discrimination. There is no contention in this case that Goode failed to make out a prima facie case, and accordingly, we need not consider that question. In any event, once a party offers a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of a prima facie case is moot. *See Hernandez*, 500 U.S. at 359, 111 S.Ct. at 1866.

■ During the second step of the process, the burden shifts to the party who has exercised the strike to come forward with a race-neutral explanation. *Purkett*, 514 U.S at 767, 115 S.Ct. at 1770; *Hernandez*, 500 U.S. at 358–59, 111 S.Ct. at 1865–66. The United States Supreme Court clarified in *Purkett* the role of an appellate court at this stage of the inquiry. The appellate court does not consider at the second step whether the explanation is persuasive or even plausible. The issue for the trial court and the appellate court at this juncture is the facial validity of the explanation. *Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771. In evaluating whether the explanation offered is race-neutral, a court must determine whether the peremptory challenge violates the Equal Protection Clause as a matter of law, assuming the reasons for the peremptory challenge are true. *Hernandez*, 500 U.S. at 359, 111 S.Ct. at 1866. A neutral explanation means that the challenge was based on something other than the juror's race. *Id.* at 360, 111 S.Ct. at 1866–67. Unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race-neutral for purposes of the analysis at step two. *Id.* Thus the inquiry does not terminate at step two even if the party opposing the peremptory challenge offers a "silly or superstitious" explanation, so long as that explanation is race-neutral. *Purkett*, 514 U.S at 768, 115 S.Ct. at 1771. It is not until the third step that the persuasiveness of the justification for the challenge becomes relevant. At the third step of the process, the trial court must determine if the party challenging the strike has proven purposeful racial discrimination, and the trial court may believe or not believe the explanation offered by the party who

exercised the peremptory challenge. *Id.* It is at this stage that implausible justifications for striking potential jurors "may (and probably will) be found [by the trial court] to be pretexts for purposeful discrimination." *Id.* Nevertheless, the Supreme Court has emphasized that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the [peremptory] strike." *Id.*

■ The decisions of the United States Supreme Court also make clear that at the third step in the process, the issue of whether the race-neutral explanation should be *believed* is purely a question of fact for the trial court. *Hernandez,* 500 U.S. at 364, 367, 111 S.Ct. at 1868–69, 1870. In the federal system, the standard of review on appeal of a *Batson/Edmonson* challenge is whether the ruling was "clearly erroneous." *Id.* at 369, 111 S.Ct. at 1871. Under that standard, a trial court's finding will not be disturbed unless the appellate court is " 'left with a definite and firm conviction that a mistake has been committed.' " *Hernandez,* 500 U.S. at 369, 111 S.Ct. at 1871 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). The Texas Court of Criminal Appeals has also adopted the clearly erroneous standard of review for *Batson* issues. *See Whitsey v. State,* 796 S.W.2d 707, 720–26 (Tex.Crim.App.1989).

■ Our civil jurisprudence in Texas has employed a deferential, but more familiar, "abuse of discretion" standard in reviewing many of the decisions made by a trial court. A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *Mercedes–Benz Credit Corp. v. Rhyne,* 925 S.W.2d 664, 666 (Tex.1996). With regard to questions of fact, our abuse of discretion standard is similar, although not identical, to the federal standard of "clearly erroneous." "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Hernandez,* 500 U.S. at 369, 111 S.Ct. at 1871 (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)); *cf. Walker v. Packer,*

827 S.W.2d 833, 839 (Tex.1992) (holding that a reviewing court may not substitute its judgment for that of the trial court with respect to resolution of factual issues committed to the trial court's discretion). In reviewing an *Edmonson* challenge, we will adhere to the abuse of discretion standard of review by which trial court rulings of this nature historically have been judged in civil cases in Texas.

■ However, a reviewing court will not be bound by a finding of no discrimination under either our abuse of discretion standard or the clearly erroneous standard if the justification offered for striking a potential juror is "simply too incredible to be accepted." *Hernandez,* 500 U.S. at 369, 111 S.Ct. at 1871. For example, in the case of *Norris v. Alabama,* 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935), it was undisputed that no African–American had served on a grand or petit jury in the area "within the memory of witnesses who had lived there all their lives." *Hernandez,* 500 U.S. at 369, 111 S.Ct. at 1871 (quoting *Norris,* 294 U.S. at 591, 55 S.Ct. at 581). Accordingly, the Supreme Court reversed the lower court's finding of no discrimination.

These are the parameters within which we analyze Goode's contentions that Shoukfeh gave no race-neutral explanation for his peremptory challenges and that the court of appeals applied the wrong standard in reviewing the trial court's ruling.

## B

■ The issue of whether Goode established a prima facie case of racial discrimination is unchallenged. Accordingly, our review begins at the second step of the *Batson/Edmonson* analysis. We must determine whether, assuming the reasons Shoukfeh offered for striking the jurors at issue were true, the peremptory challenges violate the Equal Protection Clause as a matter of law. *Hernandez,* 500 U.S. at 359, 111 S.Ct. at 1866. We conclude they do not. Shoukfeh's explanations were race-neutral.

■ Shoukfeh's counsel stated that he struck juror 7 because she knew a member of

the Goode family and that he struck juror 26 because she was a former employee of Methodist Hospital. Counsel asserted that he struck juror 28 because she said she could not sit in judgment and because she made misstatements on her juror information card. Finally, Shoukfeh's counsel claimed that he struck juror 9 because she was an unmarried, unemployed, mother of four, apparently on welfare, whom he believed would be a "bad defense juror." Each of these reasons is facially race-neutral, and it cannot be said as a matter of law that there has been a violation of the Equal Protection Clause.

## C

■■■ In proceeding to the third step of the *Edmonson* analysis, we address Goode's contention that the court of appeals failed to follow the *Batson/Edmonson* analytical framework. Goode argues that the court of appeals moved beyond the first step in the procedure only to improperly combine the second and third steps and summarily conclude that Shoukfeh's peremptory challenges were proper because the explanations offered by Shoukfeh's counsel were facially race-neutral. Goode contends that the court of appeals failed to determine whether the explanations were credible or were a mere pretext.

The United States Supreme Court has made it clear that whether the explanations offered for exercising peremptory challenges are credible is a fact question to be resolved by the trial court. *See Hernandez,* 500 U.S. at 364, 111 S.Ct. at 1868–69 (quoting *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21). That factual determination will be disturbed by this Court only upon a finding that the trial court abused its discretion.

Goode catalogues the factors upon which he relies to demonstrate that Shoukfeh's proffered reasons were pretextual. First, Goode contends that the pattern of Shoukfeh's peremptory strikes establishes an intent to purge the panel of racial minorities. Shoukfeh used six peremptory strikes. Three of these were used to remove African–Americans (jurors 7, 26, and 28), two were used to remove Anglos (jurors 13 and 22), and one to remove an Hispanic (juror 9).

The remaining panel had no African–Americans.

Next, Goode argues that racial discrimination is established because Shoukfeh did not strike Anglo jurors who possessed characteristics similar to those of minority jurors whom he did strike. Shoukfeh struck juror 26, an African–American, allegedly because she was a former Methodist Hospital nurse, but he did not strike jurors 4 and 11, Anglos who were acquainted with one of Shoukfeh's partners, or juror 18, an Anglo who, like juror 26, was a former nurse at Methodist Hospital. Shoukfeh counters that this is irrelevant for two reasons. First, he did strike juror 13, an Anglo medical professor. Second, Shoukfeh's counsel contends that unlike juror 18, juror 26's relationship with Methodist Hospital was problematic because the reasons her employment ended concerned him.

Similarly, Goode asserts that Shoukfeh struck juror 7, an African–American, because juror 7 knew a member of the Goode family, but he did not strike juror 12, an Anglo who went to school with one of James Goode's children. Shoukfeh responds that this discrepancy is meaningless because he did strike juror 22, an Anglo who went to school with Orlin Goode.

Finally, Goode contends that Shoukfeh's failure to question three members of racial minorities before striking them (jurors 9, 26, and 28) indicates that Shoukfeh's proffered reasons for exercising these peremptory challenges were pretextual. Goode argues that the lack of questioning is particularly troubling with respect to juror 9, because the record indicates that the factors Shoukfeh identified for challenging her are ambiguous or inaccurate. Shoukfeh's stated reasons for striking juror 9 were that she was an unmarried, unemployed, mother of four, apparently on welfare, who was unlikely to be a good defense juror. Shoukfeh downplays the significance of his failure to question these minority jurors because he also did not question juror 13, one of the Anglos he peremptorily challenged.

■■■ The trial court resolved these factual disputes and chose to believe that Shoukfeh's counsel exercised the peremptory challenges

for the reasons stated. The record before us does not indicate that the trial court's ruling was an abuse of its discretion. Neither this Court nor the court of appeals can second guess that decision. When, as in this case, a party offers a facially race-neutral explanation, a reviewing court cannot reweigh the evidence and reach a conclusion different from that of the trial court unless, as in *Norris*, the explanation offered is too incredible to be believed.

### D

■ The trial court refused to permit Goode to inspect the voir dire notes of Shoukfeh's attorneys or to conduct an *in camera* inspection of the notes. Goode assigns this as reversible error. Our Court has not previously considered this question.

However, the issue is one that the Texas Court of Criminal Appeals has addressed. Our sister court has held that the production of a prosecutor's juror information notes is both "necessary and proper" when the prosecutor refreshes his or her memory regarding the exercise of peremptory challenges by reviewing those notes before the *Batson* hearing. *Salazar v. State*, 795 S.W.2d 187, 193 (Tex.Crim.App.1990); *cf. United States v. Garrison*, 849 F.2d 103, 107 (4th Cir.) (holding that, should a trial court decide to examine a prosecutor's notes, it should ordinarily conduct adversary, rather than *ex parte* proceedings), *cert. denied*, 488 U.S. 996, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988). The Court of Criminal Appeals recently reiterated this rule in *Pondexter v. State*, 942 S.W.2d 577, 579 (Tex.Crim.App.1996) ("[A]ppellant is only entitled to the notes if they were actually used by the prosecutor to refresh his memory."). The *Pondexter* decision also observed that the notes were fair game even though the prosecutor was never sworn as a witness. The fact that the prosecutor gave unsworn testimony regarding the reasons for his peremptory strikes was sufficient to trigger access to the notes. *Id.* at 581–82; *cf. Guilder v. State*, 794 S.W.2d 765, 767–68

(Tex.App.—Dallas 1990, no pet.) (holding that neither *Batson* nor Rule 614 of the Texas Rules of Criminal Evidence compels disclosure of a prosecutor's notes).

Courts in other jurisdictions have not required a prosecutor to disclose voir dire notes to a *Batson/Edmonson* movant. *Foster v. State*, 258 Ga. 736, 374 S.E.2d 188, 192 (1988), *cert. denied*, 490 U.S. 1085, 109 S.Ct. 2110, 104 L.Ed.2d 671 (1989); *People v. Mack*, 128 Ill.2d 231, 131 Ill.Dec. 551, 559, 538 N.E.2d 1107, 1115 (1989); *State v. Antwine*, 743 S.W.2d 51, 67 (Mo.1987) (en banc), *vacated in part on other grounds sub nom. Antwine v. Delo*, 54 F.3d 1357 (8th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 753, 133 L.Ed.2d 700 (1996).

Under our rules of civil procedure and evidence, an attorney's work product is not subject to discovery unless either the privilege is waived or the work product falls within one of the five exceptions enumerated in Texas Rule of Civil Evidence 503(d). *See* TEX.R. CIV. P. 166b(3)(a).[1] None of the exceptions of Rule 503(d) apply here, but Goode contends that Shoukfeh waived the privilege because Shoukfeh's attorneys made statements and gave sworn testimony about their reasons for exercising the peremptory challenges at issue.

■ Providing an explanation for peremptory challenges does not in and of itself waive the work product privilege that applies to notes made by counsel during voir dire. If we were to accept such reasoning, a considerable part of an attorney's work product would be discoverable as the case unfolded and counsel's mental impressions and strategies became clear. Nor does a trial court's authority to examine privileged documents *in camera* affect the analysis. Generally, a trial court conducts an *in camera* inspection to determine if a document is in fact privileged. If it is not privileged, then it may become evidence that the factfinder may consider. If the document is privileged, it is not subject

---

1. That rule provides:
   3. Exemptions. The following matters are protected from disclosure by privilege:
   a. *Work Product.* The work product of an attorney, subject to the exceptions of Texas

Rule of Civil Evidence 503(d) which shall govern as to work product as well as to attorney-client privilege.
TEX.R. CIV. P. 166b(3)(a).

to discovery and may not be considered by the factfinder, even when the factfinder is the trial court. The notes made by counsel during trial are privileged work product. There is no need for an *in camera* inspection to determine the applicability of this privilege. Work product of counsel may not be considered by the factfinder unless the privilege has been waived or one of the Rule 503(d) exceptions applies.

We think the approach taken by the Texas Court of Criminal Appeals in *Salazar* and *Pondexter* is correct and comports with our rules of evidence. The Court of Criminal Appeals has based its holdings on Rule 611 of the Texas Rules of Criminal Evidence, which provides that when a

> witness uses a writing to refresh his memory for the purpose of testifying either while testifying or before testifying, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

TEX.R.CRIM. EVID. 611. A similar rule applies to civil trials under Rule 612 of the Texas Rules of Civil Evidence.[2] The only significant difference between the two rules is that the civil rule distinguishes between those writings used to refresh a witness's testimony *while* testifying and those used to refresh *before* testifying. If a witness uses the writing while testifying the adverse party must be given access to it, but if the writing is used before the witness testifies, the court has the discretion to order the writing disclosed to the adverse party. TEX.R. CIV. EVID. 612.

■ We hold that an *Edmonson* movant has the right to examine the voir dire notes

of the opponent's attorney when the attorney relies upon these notes while giving sworn or unsworn testimony in the *Edmonson* hearing. Absent such reliance, the voir dire notes are privileged work product, and the movant may not examine them. In this case, Goode does not allege that Shoukfeh's attorneys relied upon their notes during the *Edmonson* hearing, but merely claims that the notes contain evidence of the attorneys' allegedly race-based decisions. Accordingly, the notes are privileged, and the trial court properly ruled that Goode could not examine them.

## III

The court of appeals expressed some consternation that neither this Court nor the United States Supreme Court has offered guidance for the procedures to be followed in resolving *Edmonson* challenges to peremptory strikes.

> Though the topic has long been the subject of judicial discourse in the criminal realm, neither of the aforementioned supreme courts expounded upon the procedures utilized in a civil proceeding. Indeed, this dearth of guidance spawned at least one jurist to wish that "some of these appellate ... judges that turn in all this [stuff], would have to come down here and put up with it."

915 S.W.2d at 669 (alteration in original). We are generally reluctant to address issues that are not squarely before us. In this instance, however, we are persuaded that some guidance for future cases is appropriate.

Procedures for resolution of *Edmonson* challenges must adequately safeguard the constitutional rights arising under the Equal

2. Rule 612 provides:
If a witness uses a writing to refresh his memory for the purpose of testifying either—
(1) while testifying, or
(2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portion not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not produced or delivered pursuant to order under this rule, the court shall make any order justice requires.
Tex.R. Civ. Evid. 612.

Protection Clause. However, those procedures should disrupt the trial of the case as little as reasonably possible. We are sensitive to concerns that *Edmonson* hearings will become "yet another complexity . . . to an increasingly Byzantine system of justice that devotes more and more of its energy to sideshows and less and less to the merits of the case." *Edmonson*, 500 U.S. at 645, 111 S.Ct. at 2096 (Scalia, J., dissenting).

The United States Supreme Court has declined "to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges." *Batson*, 476 U.S. at 99, 106 S.Ct. at 1724–25; *see also Powers v. Ohio*, 499 U.S. at 416, 111 S.Ct. at 1374 ("It remains for the trial courts to develop rules, without unnecessary disruption of the jury selection process, to permit legitimate and well-founded objections to the use of peremptory challenges as a mask for race prejudice."). Instead, the Supreme Court has continued to allow lower courts to wrestle with *Batson/Edmonson* procedures. *See Edmonson*, 500 U.S. at 631, 111 S.Ct. at 2089 ("The same approach [as *Batson* ] applies in the civil context, and we leave it to the trial courts in the first instance to develop evidentiary rules for implementing our decision.").

The state and federal courts left with the responsibility of formulating *Batson/Edmonson* procedures have produced a fairly uneven set of procedures across the country. As the court of appeals noted below, the resulting "dearth" of consistent procedural guidance is the "predicament" of the *Edmonson* rule. 915 S.W.2d at 669.

The Texas criminal jurisprudence on *Batson* procedures is much more developed than

the civil jurisprudence. In 1987, the Legislature included a provision in the Texas Code of Criminal Procedure incorporating *Batson*.[3] Because no similar change was made to the Texas Rules of Civil Procedure, the courts of appeals have often looked to the state's criminal jurisprudence for guidance in applying *Batson* and its progeny to civil matters. *See In re A.D.E.*, 880 S.W.2d 241, 243 (Tex. App.—Corpus Christi 1994, no writ); *Texas Tech Univ. Health Sciences Ctr. v. Apodaca*, 876 S.W.2d 402, 406 (Tex.App.—El Paso 1994, writ denied); *Lott v. City of Fort Worth*, 840 S.W.2d 146, 149 (Tex.App.—Fort Worth 1992, no writ).

The most general procedural issue concerns the overall nature and tenor of a *Batson/Edmonson* hearing. The court of appeals in this case concluded that such a hearing is an "adversarial, evidentiary hearing" in which "the procedural and evidentiary rules normally applicable to general civil matters apply with equal force." 915 S.W.2d at 669. Likewise, other Texas courts of appeals have repeatedly held that a *Batson/Edmonson* hearing should be adversarial. *See Texas Tech Univ. Health Sciences Ctr.*, 876 S.W.2d at 407 n. 3; *Lott*, 840 S.W.2d at 149–50; *Shields v. State*, 820 S.W.2d 831, 832 (Tex.App.—Waco 1991, no pet.); *Williams v. State*, 767 S.W.2d 872, 874 (Tex.App.—Dallas 1989, pet. ref'd). Other jurisdictions also require a full adversarial hearing. *See, e.g., United States v. Garrison*, 849 F.2d 103, 106 (4th Cir.) ("[T]he important rights guaranteed by *Batson* deserve the full protection of the adversarial process except where compelling reasons requiring secrecy are shown."), *cert. denied*,

---

**3.** The statute provides:

Art. 35.261. Peremptory challenges based on race prohibited

  (a) After the parties have delivered their lists to the clerk under Article 35.26 of this code and before the court has impanelled [sic] the jury, the defendant may request the court to dismiss the array and call a new array in the case. The Court shall grant the motion of a defendant for dismissal of the array if the court determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race,

and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons based on race. If the defendant establishes a prima facie case, the burden then shifts to the attorney representing the state to give a racially neutral explanation for the challenges. The burden of persuasion remains with the defendant to establish purposeful discrimination.

  (b) If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case.

Tex.Code Crim. P. art. 35.261.

488 U.S. 996, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988).

In contrast, courts in other jurisdictions have held that a full-blown, adversarial hearing is not required. *See People v. Mack*, 128 Ill.2d 231, 131 Ill.Dec. 551, 559, 538 N.E.2d 1107, 1115 (1989) ("[A] *Batson* hearing does not require trial-type procedures, such as the introduction of sworn testimony and the cross-examination of adverse witnesses."); *People v. Hameed*, 88 N.Y.2d 232, 644 N.Y.S.2d 466, 666 N.E.2d 1339, 1342–43 (1996). The Maryland Court of Appeals, for example, has held that "[m]ore often than not, simply calling upon the prosecutor to explain the reasons for the challenge, and offering the defendant the opportunity to rebut the explanation, will suffice." *Gray v. State*, 317 Md. 250, 562 A.2d 1278, 1282 (1989). Using a slightly different approach, Mississippi merely requires the trial court to make an on-the-record factual determination of the merits of the State's reasons for exercising its peremptory challenges. *Hatten v. State*, 628 So.2d 294, 298 (Miss.1993).

Still other jurisdictions have specifically approved the use of *ex parte, in camera* proceedings in lieu of an adversarial hearing. *See United States v. Davis*, 809 F.2d 1194, 1201–02 (6th Cir.), *cert. denied*, 483 U.S. 1007, 107 S.Ct. 3234, 97 L.Ed.2d 740 (1987). However, most jurisdictions that permit such proceedings discourage their use absent special circumstances. *United States v. Thompson*, 827 F.2d 1254, 1258–59 (9th Cir.1987) (stating that trial judges should be given discretion to conduct *Batson* hearings, but that absent "compelling justification, ex parte proceedings are anathema in our system of justice"); *United States v. Tucker*, 836 F.2d 334, 340 (7th Cir.1988), *cert. denied*, 490 U.S. 1105, 109 S.Ct. 3154, 104 L.Ed.2d 1018 (1989). ("[W]hile we hold that it is up to the trial judge to decide what procedure is best-suited for a particular case, we trust that the trial judge will utilize an adversarial procedure whenever possible.").

Finally, many jurisdictions simply leave it to the trial courts to determine appropriate procedures for a given set of circumstances. *See United States v. Clemons*, 941 F.2d 321, 323–24 (5th Cir.1991); *Gray*, 562 A.2d at 1281–84. The trial court's choice of procedure can then be reviewed for an abuse of discretion. *Gray*, 562 A.2d at 1284.

■ Consideration of an *Edmonson* challenge is by its very nature adversarial. Further, this Court has often held that *ex parte, in camera* procedures are disfavored. *See, e.g., Remington Arms Co. v. Canales*, 837 S.W.2d 624, 626 (Tex.1992). Accordingly, at a minimum, the proceedings should be held in open court. Unsworn statements of counsel may be offered to explain why the peremptory challenges were exercised. The juror information cards may be made a part of the record by inclusion in the transcript or by a formal tender into evidence. To the extent that any party wishes to include other information or matters in the record, the rules of evidence and procedure apply.

The more difficult questions are the extent to which the party making the *Edmonson* challenge may rebut the explanations offered and whether there is a right of cross-examination. Some jurisdictions have held that the movant does have the right to rebut the opponent's stated reasons or otherwise prove that these reasons are a sham or a pretext. *See United States v. Roan Eagle*, 867 F.2d 436, 441 (8th Cir.), *cert. denied*, 490 U.S. 1028, 109 S.Ct. 1764, 104 L.Ed.2d 199 (1989); *K.S. v. Carr*, 618 So.2d 707, 710 (Ala.1993); *Stanley v. State*, 313 Md. 50, 542 A.2d 1267, 1272 (1988); *Thorson v. State*, 653 So.2d 876, 896 (Miss.1994); *Woodson v. Porter Brown Limestone Co.*, 916 S.W.2d 896, 904 (Tenn. 1996); *Buck v. Commonwealth*, 247 Va. 449, 443 S.E.2d 414, 415 (1994). Frequently, these jurisdictions note that the assignment to the movant of the ultimate burden of persuasion in a *Batson/Edmonson* hearing dictates that the movant have the last word. *See, e.g., Gilchrist v. State*, 340 Md. 606, 667 A.2d 876, 886 (1995). However, other jurisdictions, recognizing that *Batson* itself does not mention this right, have refused to recognize it. *Tucker*, 836 F.2d at 340; *Davis*, 809 F.2d at 1202.

The Texas Court of Criminal Appeals has held that the movant does have the right to rebut. *Salazar v. State*, 795 S.W.2d 187, 192 (Tex.Crim.App.1990) ("[T]he burden to show purposeful discrimination shifts back to the

defendant to impeach or refute the neutral explanation or show that it is merely a pretext."). The courts of appeals have applied this rule to the *Edmonson* civil context as well. *Dominguez v. State Farm Ins. Co.*, 905 S.W.2d 713, 716 (Tex.App.—El Paso 1995, writ dism'd by agr.) ("After the striking party has given racially-neutral reasons for its peremptory challenges, the complaining party may then offer evidence showing that the explanations are sham or pretext for discrimination."); *In re A.D.E.*, 880 S.W.2d at 243.

■ Because the party challenging the peremptory strikes has the ultimate burden of persuasion, *Purkett*, 514 U.S. at 769, 115 S.Ct. at 1771; *Batson*, 476 U.S. at 94 n. 18, 106 S.Ct. at 1721 n. 18, we conclude that the trial court should provide the party challenging the strikes under *Edmonson* a reasonable opportunity to rebut the race-neutral explanations.

Whether the movant should have the right to cross-examine the opponent's attorney in order to establish that the attorney's stated race-neutral explanations are pretextual is another much-debated issue. Some jurisdictions place the determination of the right to cross-examine within the discretion of the trial court. *See Hameed*, 644 N.Y.S.2d 466, 666 N.E.2d at 1342–43. Others deny the right on the grounds that "the disruption to a trial which could occur if an attorney in a case were called as a witness overbears any good which could be obtained by his testimony." *State v. Jackson*, 322 N.C. 251, 368 S.E.2d 838, 842 (1988), *cert. denied*, 490 U.S. 1110, 109 S.Ct. 3165, 104 L.Ed.2d 1027 (1989). However, in *Salazar v. State*, the Texas Court of Criminal Appeals held that "[c]ross-examination [of the prosecutor] is necessary in a *Batson* hearing because once the State has met its burden of coming forward with neutral explanations for its peremptory strikes, the burden to show purposeful discrimination shifts back to the defendant to impeach or refute the neutral explanation or show that it is merely a pretext." 795 S.W.2d at 192 (footnote omitted).

■ As with the opportunity to rebut, we conclude that the trial court should provide the party asserting objections under *Edmonson* with a reasonable opportunity to conduct cross-examination.

In sum, we acknowledge the importance of protecting equal protection rights, but also adhere to the Supreme Court's observations in *Batson* and its progeny that procedures for *Edmonson* hearings should prevent "unnecessary disruption" in the trial courts. *Powers v. Ohio*, 499 U.S. at 416, 111 S.Ct. at 1374.

## IV

■ Finally, Goode argues that the court of appeals erred in affirming the trial court's denial of Goode's challenges of jurors 6 and 30 for cause. In *Hallett v. Houston Northwest Medical Center*, 689 S.W.2d 888 (Tex. 1985), we set forth the procedure for asserting error in the denial of a challenge for cause. A litigant denied such a challenge must advise the trial court, before exercising its peremptory challenges, that the court's denial of its challenges for cause would force the party to exhaust its peremptory challenges and that, after exercising these peremptory challenges, specific objectionable jurors would still remain on the panel. *Id.* at 890.

■ Goode complied with *Hallett* with regard to juror 30, but at no time mentioned juror 6. Accordingly, we agree with the court of appeals that Goode waived his right to complain on appeal of the trial court's decision not to excuse juror 6 for cause.

■ With respect to juror 30, Goode argues that the voir dire examination of juror 30 demonstrates that he was biased and should have been excused for cause.[4] If a

---

4. The pertinent exchanges that took place are as follows:

A: Both sides, I feel, are pretty even. I will have to admit, though, that the other side, because the way it was explained, ... as far as just the whole explanation of blood clotting and what happened, I am leaning a little more towards the doctor's side. Now, that—now when I say leaning, it's only because of just what I have heard so far.... It was just a little more clear in my mind.

potential juror is biased or prejudiced for or against a party in a lawsuit as a matter of law, the trial court must disqualify that person from service. TEX. GOV'T CODE § 62.105(4); *Swap Shop v. Fortune*, 365 S.W.2d 151, 154 (Tex.1963). We have defined bias as "an inclination toward one side of an issue rather than the other, but to disqualify, it must appear that the state of mind of the juror leads to the natural inference that he [or she] will not or did not act with impartiality." *Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex.1963). Prejudice is defined as "prejudgment, and consequently embraces bias." *Id.*

We cannot conclude that juror 30 was biased or prejudiced as a matter of law. The trial court was "in a better position ... to evaluate the juror's sincerity and his capacity for fairness and impartiality." *Swap Shop*, 365 S.W.2d at 154. Juror 30's voir dire statements do not compel us as a matter of law to disturb the trial court's finding. *See id.*; *Glenn v. Abrams/Williams Bros.*, 836 S.W.2d 779, 782 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

\* \* \*

We affirm the judgment of the court of appeals.

GONZALEZ, Justice, concurring.

Although I concur in the judgment, I object to the Court's refusal to adopt the "clearly erroneous" standard of reviewing a *Batson/Edmonson* challenge. I would follow the lead of the federal courts and the Texas Court of Criminal Appeals and adopt this standard, rather than the "abuse of discretion" standard the Court applies today. In addition, I write separately to express relief that, contrary to the prediction I made in *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 150 (Tex.1995) (Gonzalez, J., concurring), peremptory challenges are not dead, but are alive and well in Texas.

In *Bouillion*, I noted a shift in the focus of our peremptory challenge jurisprudence from a litigant's right to receive a fair and impartial trial to a prospective juror's right to be free from discrimination. *Bouillion*, 896 S.W.2d at 151 (Gonzalez, J., concurring). Before today, this shift had extended to the verge of ridiculousness. The definition of "cognizable group"—analyzed as part of the first phase of evaluating a *Batson/Edmonson* objection—had become so expansive in some courts that a litigant could object to almost any peremptory strike on the ground that the excluded venire member had characteristics not shared by other members of the panel. *Id.* at 154.

As the Court acknowledges, in federal courts, in Texas criminal appeals, and heretofore in Texas civil appeals, the standard of review of a *Batson/Edmonson* challenge has been whether the ruling was "clearly erroneous." *See* 943 S.W.2d 446; *see also Vargas v. State*, 838 S.W.2d 552, 553–54 (Tex.Crim. App.1992); *DeBlanc v. State*, 799 S.W.2d 701, 713 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991); *Cain v. Pruett*, 938 S.W.2d 152, 161 (Tex.App.—Dallas 1996, n.w.h.); *Molina v. Pigott*, 929 S.W.2d 538, 545 (Tex.App.—Corpus Christi 1996, n.w.h.); *In re A.D.E.*, 880 S.W.2d 241, 243 (Tex.App.—Corpus Christi 1994, no writ); *Texas Tech Univ. Health*

Q: [F]rom what I understand that you have told me, you might have a little bit of leaning or as we talked to, a slight bias at this point in time, toward Dr. Shoukfeh, is that true?
A: At this time, yes.
Q: [D]oes that mean that as we sit here now, that I am starting off a little bit behind and he is starting off a little bit ahead, even though it's a little bit?
A: The only reason I would say starting off is just because of the explanation. Not so much that I don't believe you or I do believe him. It's just simply because I understood it a little better. As time goes on, I might understand your side just as much. Now, when I say—when you say bias, it's not that great of a margin.
Q: So it's just a small bias?
A: Yes.
Q: Instead of a large bias?
A: Yes, if you have to put a size on it, yes.

At that point, Shoukfeh's counsel attempted to rehabilitate juror 30.

Q: [C]an you make your decision based upon just the evidence that comes from the witness stand?
A: No, I mean—I am sorry. Yes, I can make my decision on the evidence that comes from the witness stand.... The reason I said no is because no, I have not made a decision just from what you two have said.

*Sciences Center v. Apodaca,* 876 S.W.2d 402, 408 (Tex.App.—El Paso 1994, writ denied); *Lott v. City of Fort Worth,* 840 S.W.2d 146, 150 (Tex.App.—Fort Worth 1992, no writ). Given that the courts of appeals are accustomed to applying the clearly erroneous standard in civil matters, I see no compelling reason to deviate from it now.

In addition, it is debatable which standard is more deferential to the trial court, and whether any real difference exists between the two standards. The definition of abuse of discretion is well established and admittedly gives great deference to the trial court. *See Mercedes–Benz Credit Corp. v. Rhyne,* 925 S.W.2d 664, 666 (Tex.1996); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex.1985). As we recently explained, for the trial court to abuse its discretion, there must have been only one reasonable decision, and the trial court must have gone against this decision. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). The *Walker* articulation of the abuse of discretion standard is indistinguishable from the clearly erroneous standard as quoted by this Court. *See* 943 S.W.2d 446. In the case before us, the result would be the same under either standard. For the sake of consistency in our courts of appeals, however, I would adopt the clearly erroneous standard.

Aside from this objection, I agree with the Court's analysis. Reviewing the case before us, we conclude that Shoukfeh's explanation that he struck juror nine "because she was an unmarried, unemployed, mother of four, apparently on welfare, whom he believed would be a 'bad defense juror' " is facially race-neutral. 943 S.W.2d 447. This explanation does not violate the Equal Protection Clause as a matter of law because there is no demand that the explanation be persuasive or even plausible. The issue is the facial validity of the explanation. *Purkett v. Elem,* 514 U.S. 765, 769–70, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995).

The showing of a prima facie case by the opponent of the strike effectively creates a rebuttable presumption that the prospective juror's equal protection rights have been violated. This presumption only shifts the burden of coming forward with the evidence; it does not shift the burden of persuasion. *Id.* at 768, 115 S.Ct. at 1771. Any facially neutral explanation for the strike is sufficient to rebut the presumption that the strike is racially motivated; however, the burden of persuasion is always on the party opposing the strike. *Id.*

Because the party making the strike does not have the burden of persuasion, the plausibility of the justification is not considered. Plausibility is only relevant in determining the weight of the burden that the opponent of the strike must overcome in his offer of proof. An implausible justification, though neutral, would most likely be found pretextual in the face of solid evidence of discrimination. *Id.* It therefore follows that even a weak justification, if plausible, will be upheld if the opponent of the strike does not meet his burden of proof. Justifications that have been used to uphold strikes include body language, inattentiveness, physical characteristics, demeanor, dress, and youth. *See* Elaine A. Carlson, *Batson, J.E.B., and Beyond: The Paradoxical Quest for Reasoned Peremptory Strikes in the Jury Selection Process,* 46 Baylor L.Rev. 947, 998 (1994).

Because the ultimate burden of showing a discriminatory purpose still falls on the party opposing the strike, peremptory strikes retain their distinct status. Peremptory strikes still may be differentiated from challenges for cause because the party opposing a challenge for cause has the burden of showing the legitimacy of the justification, whereas with peremptory strikes, the opponent of the strike has the burden. Attorneys may once again strike prospective jurors who happen to be of a cognizable class (race, ethnicity, or gender) on the basis of an unquantifiable feeling, such as a hunch or instinct, as long as the party exercising the strike comes forward with a race-neutral explanation. Today's decision, by clearly placing the burden on the opponent of the strike, breathes much-needed life into peremptory challenges in Texas.