Carrie M. BAKER, Appellant,

v.

SENSITIVE CARE–LEXINGTON PLACE HEALTH CARE, INC. and Sensitive Care, Inc. d/b/a Lexington Place Health Care, Appellees.

No. 01–96–01297–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 10, 1998.

Andrew S. Goulub, Houston, for appellant.

Michael Handy, Fort Worth, for appellees.

Before COHEN, O'CONNOR and ANDELL, JJ.

1. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

## OPINION

ANDELL, Justice.

The appellant, Carrie M. Baker, appeals a judgment in her favor. In her sole point of error, Baker argues the court clearly erred by overruling her challenge to the racially motivated use of a jury strike. We affirm.

## Background

During jury selection, Lexington Place exercised a peremptory challenge to remove venire member number three, a black woman, from the panel. Baker objected that the challenge was impermissibly motivated by race under *Batson v. Kentucky*.[1]

The court conducted a brief hearing on Baker's challenge, which went as follows:[2]

MR. GOLUB: Judge, we need to do a *Batson* challenge to the exclusion of Juror No. 3. I don't believe there was any justification for excluding her from the panel. I think this was based on the fact that she is a black woman, and I don't know there's any nondiscriminatory reason for her exclusion from the panel.

THE COURT: Your response?

MR. HANDY: Your Honor, we based—we didn't consider color. We based it on the fact that she's a postal worker and a union worker, and postal workers are known to be militant and more pro-employee then pro-employer, and that's what was the basis for striking that juror.

MR. GOLUB: There is another postal worker on the panel, No. 17, and he was not struck by the defendants.

MR. HANDY: Well, that's the lesser of evils.

MR. GOLUB: Number 17 is an employee of the U.S. Post Office, and that juror was not struck.

MR. HANDY: You want me to—

THE COURT: That's his response to your statement.

2. Plaintiff's counsel was Andrew S. Golub; defense counsel was Michael Handy.

MR. HANDY: I understand that, but that doesn't change the fact that—I'm trying to think why we kept him. We had a big question mark on him and ended up keeping him because it was either that or somebody else. But I absolutely didn't want a postal worker on the jury.

MR. GOLUB: There is a racially neutral reason, but the fact is that the black person on the jury didn't say anything to give any indication about her opinions or feelings at all except to state that loyalty is an important aspect of an employee. It is up to the defendant, once a factor that there is a prima facie case of discrimination made known to the Court, to come up with a showing that this was not discrimination, and all they're saying is that we're targeting postal workers where there's another postal worker that they did select, who is white. So what we have here is a selection process about which postal worker to strike that appears to be made on a postal worker's race, a venireman's race.

MR. HANDY: That is a racially mixed group. We didn't go through and cut all of the blacks. We cut this lady because she was a postal worker and for union reasons. We may have not been consistent as we got later in the numbers, but I don't think you could compare one with the other. There wasn't another reason. I'll state so under oath.

THE COURT: There are others on the jury?

MR. HANDY: Other blacks on the jury? There are two blacks on the jury, yes, sir.

THE COURT: Is that right?

MR. GOLUB: That is correct.

THE COURT: I hadn't noticed because I don't notice those kinds of things. Okay. Anything else?

MR. GOLUB: Judge, we—is the motion— is the Court going to make a ruling on the motion?

THE COURT: Sure. Denied. What else?

Baker contends the court erred by allowing Lexington Place to strike juror number three though Lexington Place did not offer a race-neutral explanation for its challenge.

### *Batson/Edmonson* Challenges

■ In *Batson v. Kentucky*, the United States Supreme Court declared that racially motivated use of peremptory challenges in criminal cases violates due process of law and requires reversal. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Edmonson v. Leesville Concrete Co.*, the Court extended the reach of *Batson* to civil trials. 500 U.S. 614, 618–28, 111 S.Ct. 2077, 2081–87, 114 L.Ed.2d 660 (1991).

■ Resolution of a *Batson/Edmonson* challenge is a three-step process: (1) the opponent of the peremptory challenge must establish a prima facie case of racial discrimination; (2) the party who exercised the strike must come forward with a race-neutral explanation; and (3) if the striking party does so, the party challenging the strike must prove purposeful racial discrimination. *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834; *Hernandez v. New York*, 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395; *Goode v. Shoukfeh*, 943 S.W.2d 441, 445 (Tex.1997).

#### 1. Prima Facie Case

■ Because Lexington Place offered an explanation for striking veniremember three without first objecting that Baker did not state a prima facie case, it waived that objection. *Goode*, 943 S.W.2d at 445.

#### 2. Race–Neutral Explanation

■ In evaluating whether the explanation offered is race-neutral, we must determine whether the peremptory challenge violates the Equal Protection Clause as a matter of law, assuming the reasons for the peremptory challenge are true. *Hernandez*, 500 U.S. at 359, 111 S .Ct. at 1866; *Goode*, 943 S.W.2d at 445. A neutral explanation means the challenge was based on something other than the veniremember's race. *Hernandez*, 500 U.S. at 360, 111 S.Ct. at 1866–67; *Goode*, 943 S.W.2d at 445. Unless a discriminatory intent is inherent in the explanation, the reason offered will

be deemed race-neutral for purposes of the analysis at step two. *Hernandez,* 500 U.S. at 360, 111 S.Ct. at 1866–67; *Goode,* 943 S.W.2d at 445. Thus, the inquiry does not terminate at step two even if the party opposing the peremptory challenge offers a "silly or superstitious" explanation, so long as that explanation is race-neutral. *Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771; *Goode,* 943 S.W.2d at 445. The persuasiveness of the justification for the challenge is not relevant until the third step. *Goode,* 943 S.W.2d at 445.

Lexington Place's attorney explained: "We based [the challenge] on the fact that she's a union worker and a postal worker, and postal workers are known to be militant and more pro-employee than pro-employer, and that's what was the basis for striking that juror." Baker's attorney agreed that this explanation was racially neutral. This explanation was not based on the juror's race, but rather on her occupation and the views and attitudes attached to that occupation. Striking a juror because of his employment with the United States Postal Service constitutes a facially race-neutral explanation and does not violate *Batson. Tompkins v. State,* 774 S.W.2d 195, 205 (Tex.Crim.App.1987).

### 3. Purposeful Racial Discrimination

▆▆▆▆ At the third stage of the *Batson/Edmonson* analysis, the trial court may determine if the party challenging the strike has proven purposeful discrimination, and the trial court may believe or not believe the explanation offered by the party who exercised the peremptory challenge. *See Hernandez,* 500 U.S. at 364, 367, 111 S .Ct. at 1866–67, 1870; *Goode,* 943 S.W.2d at 446. The issue of whether the race-neutral explanation should be believed is purely a question for the trial court. *Hernandez,* 500 U.S. at 364, 367, 111 S.Ct. at 1866–67, 1870; *Goode,* 943 S.W.2d at 446. It is at this stage that implausible justifications for striking potential jurors "may (and probably will) be found [by the trial court] to be pretexts for purposeful discrimination." *Purkett* 514 U.S. at 768, 115 S.Ct. at 1771; *Goode,* 943 S.W.2d at 446.

Baker claims the court erred in accepting Lexington Place's explanation because (1) nothing in the record supports characterizing Baker as a militant, anti-employer, union member and (2) a white male postal worker (veniremember number 17) was not struck from the jury.

During voir dire, the full extent of the excluded veniremember's statements was that pride, loyalty, and good attendance make for a good employee. Neither these responses, nor the juror information cards show the excluded juror to be a militant, anti-employer, union member. In fact, when veniremember number three was asked questions she tended to reveal pro-employer views and not an anti-employer stance. These responses arguably support a finding that Lexington Place's proffered explanation was merely a pretext.

However, *Keeton v. State,* 749 S.W.2d 861, 868 (Tex.Crim.App.1988), lays out certain factors which can be used to overcome a finding of pretext. These factors include:

1. No evidence of a pattern of strikes used to challenge black veniremembers; and

2. Blacks remaining on the venire.

*Keeton,* 749 S.W.2d at 868.

There is nothing in the record to suggest that a pattern of strikes was used to challenge veniremembers on the basis of race. In fact, two blacks were seated on the jury. The selected jury's racial mix undercuts Baker's claim that there was purposeful discrimination.

Baker further contends that leaving a white postal worker on the jury when a black veniremember was struck for being a postal worker raises an inference of discrimination.

Lexington Place explained that it did not want any postal employees on the jury, but that it had competing concerns later in the panel selection when veniremember number 17 was questioned, and Lexington Place chose not to strike him because he was "the lesser of two evils." The record supports that assertion. Juror number 17's voir dire responses were very favorable to the defense. He replied that he had been the foreman on a jury that had reached a verdict

for a defendant in a civil case, and he had been exposed to propaganda regarding lawsuit abuse and mental anguish suits.

▆▆▆▆ The standard of review is "abuse of discretion." *Goode*, 943 S.W.2d at 446. A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *Id.* Considering that (1) there were two black persons left on the venire, (2) Lexington Place provided a facially race-neutral explanations for not striking veniremember number 17, and (3) juror number 17's responses favored Lexington Place's assertion that he was "the lesser of two evils," we cannot hold there was an abuse of discretion.

We overrule the sole point of error and affirm the judgment.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

I dissent. The trial judge should have sustained Carrie Baker's *Batson* challenge to Lexington Place's peremptory strike. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We should reverse and remand for a new trial.

The venire consisted of 36 people. Lexington Place used a peremptory strike on venire member three, Rhonda West, an African–American who worked for the United States Post Office.

West's only participation in voir dire consisted of the following statements:

Baker's attorney: Who else thinks it's important for employees to put their best effort forward? Juror No. 3?

West: I do.

Baker's attorney: What do you think? You agree that it's important for employees to put forth their employees to be loyal to their employer?

Another venire member: Yes.

Baker's attorney: How about you, ma'am?

West: Uh-huh.

Baker challenged Lexington Place's strike against West as racially motivated. As an explanation, the attorney for Lexington Place said he based the decision to strike West

on the fact that she's a postal worker and a union worker, and postal workers as known to be militant and more pro-employee then [sic] pro-employer, and that's what was the basis for striking that juror.

The venire panel included another postal worker, Michael Lee Brown, an Anglo male. Lexington Place did not strike Brown. Lexington Place described its decision as "the lesser of evils." Other than that, Lexington Place could not explain its decision. When asked to explain why Lexington Place did not strike Brown, its lawyer said

I'm trying to think why we kept him. We had a big question mark on him and ended up keeping him because it was either that or somebody else. But I absolutely didn't want a postal worker on the jury.

The majority opinion correctly identifies the three steps process for resolving a *Batson* objection to a peremptory challenge. It is the third of those steps that is at issue in this case, the facial validity of the explanation for the peremptory challenge.[1]

During the second step of the process, the party who exercised the strike must come forward with a race-neutral explanation, showing the challenge was based on something other than the potential juror's race. *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834; *Hernandez v. New York*, 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395 (1991); *Goode v. Shoukfeh*, 943 S.W.2d 441, 445 (Tex. 1997). Whether the explanation is persuasive or even plausible is not important at this stage; the issue is the facial validity of the explanation. *Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771; *Goode*, 943 S.W.2d at 445. In evaluating whether the explanation is race-

1. The majority's opinion contains a potentially misleading statement, that Baker's attorney agreed that the explanation offered by Lexington was race neutral. Op. p. 755. The majority is referring to Golub's statement quoted in the majority opinion, that begins "There is a racially neutral reason, but ..." Op. p. 756. Baker's entire argument is that the explanation for the peremptory strike of West was *facially* neutral and was pretextural reason for striking an African–American from the panel.

neutral, we must determine whether the peremptory challenge violates the Equal Protection Clause as a matter of law, assuming the reasons for the challenge are true. *Hernandez*, 500 U.S. at 359, 111 S.Ct. at 1866. Unless a discriminatory intent is inherent in the explanation, it will be deemed race-neutral for purposes of the analysis at step two. *Hernandez*, 500 U.S. at 360, 111 S.Ct. at 1866–67. It is not until the third step that the persuasiveness of the explanation becomes relevant.

At the third step of the process, the trial court must determine if the party challenging the strike proved purposeful racial discrimination. The trial court may believe or not believe the explanation offered by the party who exercised the peremptory challenge. *Goode*, 943 S.W.2d at 445.

The Texas Supreme Court adopted the "abuse of discretion" standard to review *Batson* challenges. *Goode*, 943 S.W.2d at 446. A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding principles. *Id.* We are not bound by a finding of no discrimination under the abuse of discretion standard if the justification offered for striking a potential juror is "simply too incredible to be accepted." *Id.*

Whether the explanations offered for exercising peremptory challenges are credible is a fact question to be resolved by the trial court. *See Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21; *Goode*, 943 S.W.2d at 447. We will disturb that factual determination only upon a finding that the trial court abused its discretion. *Goode*, 943 S.W.2d at 447. I believe the explanation offered by Lexington was too incredible to be accepted, and in accepting it, the trial court abused its discretion.

In this case, one of the reasons offered for striking West—that she was a member of a union—was simply wrong. Nothing in the record showed she was a member of a union. Further, postal workers (or their views) had nothing to do with the question whether Lexington Place illegally retaliated against Baker in violation of the Texas Workers Compensation Act.

When West, who was virtually silent through most of voir dire, responded to questions, she responded in ways that tended to reveal pro-employer views, not the anti-employer views that Lexington Place ascribed to her. Lexington Place directed no questions to her, nor did she respond to any random questions posed by Lexington Place. To the extent that she did speak, West revealed only her feelings that employees should be loyal to their employers, put forth their best efforts, take pride in their job, and attend work regularly. These are not the views of a "militant," anti-employer veniremember. These support the conclusion that Lexington Place's explanation of its strike was pretextural.

Nothing in West's oral statements reflected anything about her employment by the Post Office or the characteristics of persons employed by the Post Office. And, if Lexington Place "absolutely didn't want a postal worker on the jury," as it claims, it would have exercised a strike against Brown. Lexington Place's statement stands in marked contrast to its actual conduct. Its lawyer could not explain why it struck the black postal worker but not the white postal worker.

Lexington Place's strike of West was, under the *Batson* standard, a pretextural strike of a African–American member of the venire. Because the exclusion of even one member of the venire for prohibited reasons invalidates the entire jury selection, a new trial should be ordered in this case. *Dominguez v. State Farm Ins. Co.*, 905 S.W.2d 713, 717 (Tex. App.—El Paso 1995, writ dism'd).

I would reverse and remand for a new trial.