**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 89-3680

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

WILLIAM KIRK MIXON,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
(November 5, 1992)

Before REYNALDO G. GARZA and GARWOOD, Circuit Judges and Werlein,[*] District Judge.

REYNALDO G. GARZA, Circuit Judge:

Appellant Mixon challenges his conviction of conspiracy to import and the actual importation of 500 plus pounds of marijuana into the United States based on alleged jury selection discrimination. He also claims a 4th Amendment search violation

---

[*] District Judge of the Southern District of Texas, sitting by designation.

because of the placement of a transponder on the plane he was flying.  After review we find no merit in these arguments and therefore we affirm.

FACTS

One January 7, 1986, Special Agent Luzak received a tip from a confidential source that two men had requested that their Cessna 210D aircraft be modified.  They requested that the rear seats be removed to create added storage space and that extra bladder gas tanks be connected to the wing tips.  The extra tanks cost $4800 and increased gas capacity from thirty gallons to eighty gallons of fuel, thereby increasing its range to 1200 miles.  Luzak personally observed the modifications being done.  The source told Luzak that the two men were called "Fred" and "Kirk" and that they were staying at the Holiday Inn in Vicksburg, Mississippi.  Luzak was also informed that they were driving a blue Ford long bed pickup truck.  Luzak corroborated this information and determined that the vehicle was registered to an Alex A. Vega, Jr., who had a record of firearm violations.  One of the men was identified as Fred Cody Magee who had a very extensive drug record including a conviction in 1985 for conspiracy to sell one ton of marijuana in Dallas.  Luzak also identified an accompanying individual as John Joseph Matrone who had been arrested for forgery and convicted for aiding and abetting wire fraud.

Luzak testified that the modified plane fit the profile for a

2

drug smuggling aircraft. Luzak got a warrant to place a transponder on the plane to trace its travel. On January 16, 1986, the plane was spotted coming in from the direction of Jamaica and landing in a cane field outside Baton Rouge. The agents descended upon the plane about two hours after it landed because they had lost contact with the tracer. They did not find any marijuana and a few minutes later Mixon, the appellant, returned to the aircraft and explained that the plane had broken down. Mixon, Matrone and Magee were indicted in 1988.

Magee testified for the government at Mixon's trial and stated that they had all conspired to import about 500 pounds of marijuana from Jamaica and that they had actually succeeded the night of January 16. The marijuana was already removed by the time the officers got to the plane. Magee received five (5) years active probation, Matrone two (2) years imprisonment and Mixon was sentenced to twenty (20) years for conspiracy to import and another twenty (20) for the actual importation. His prison terms are to run concurrently.

ANALYSIS

Mixon claims that the government racially discriminated against blacks in its peremptory challenges during jury selection and therefore deprived him of a racially balanced jury. The standard required in jury selection is racial neutrality. Batson v. Kentucky, 476 U.S. 79, 87, 90 L.Ed.2d 69, 106 S.Ct. 1712 (1985).

3

Every individual is entitled to a jury that is selected without racial bias. Defendants can challenge perceived racial discrimination in jury selection whether the stricken juror is of the same or different race as his own. Powers v. Ohio, 113 L.Ed. 411, 428 (1991). Therefore, Mixon who is white, may challenge the striking of blacks from sitting on the jury. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason given by the prosecutor will be deemed race-neutral." U.S. v. Clemons, 941 F.2d 321, 323 (5th Cir. 1991); see also Hernandez v. New York, ___U.S.___,111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

The reasons given by the government in the present case in response to the defense prima facie contention of bias were found by the court to be race-neutral and credible. Upon review we also find that reasons given are race neutral and we find no clear error. The final jury comprised of one (1) black and eleven (11) whites. The government used five out of its six challenges against blacks. The one black accepted by the government weakens the argument that the government was accepting jurors solely on a racial basis. The defense also used one of its preemptory challenges against a black.

The reasons given for the rejections for juror #2, James Cloud, and juror #11, Yvonne Harvey, were low level of education and non-supervisory positions at work. The government argued that

4

the case was entirely based on circumstantial evidence and needed jurors who could grasp the nuances. Even though there were white jurors with equivalent backgrounds the preemted jurors' answers and appearance went into the equation and the trial judge found the government's reasoning non-pretextual.

Jurors #21, Cassandra Waddell, and #28, Maryellen Bottley, were both rejected because they had previously been members of hung juries. The government didn't inquire about their votes on those juries because the fact that they were both exposed to hung juries alone might predispose to them to accept the same result in the present case and they were seen as risks. Bottley also indicated that her brother was convicted of a crime and this was viewed by the government as an added risk. They accepted a white juror who indicated that a relative was convicted of bootlegging but this was acceptable to them because the relative was an in-law and not a blood relative.

Finally juror #8, Mercedes Torres, was rejected because she indicated that she and her husband were ordained ministers and the government felt that perhaps she would have a higher threshold of reasonable doubt. The government also explained that Torres glared at the U.S. Attorney during voir dire and this might indicate a certain animosity towards the government.

These reasons are all race neutral and the defense failed to

5

show that they were fabricated.  We find no error in the judge's finding of credibility.

The issue claiming an illegal search of the airplane because of the placement of the transponder is equally meritless.  Its placement in the aircraft was authorized by a warrant duly executed by the Southern District Court of Mississippi on January 11, 1986.  There was sufficient probable cause for the placement of this tracer.

The government was first alerted to the modification of the plane by a confidential source.  Agent Luzak duly corroborated the information.  Government agents personally observed the rear seat removed and the extra tanks added to the wings.  A check on the individuals involved uncovered a convicted drug felon, Magee.  A check on Matrone revealed that he was also a criminal with a history of forgery arrests and a conviction on aiding and abetting wire fraud.  A check on the registered owner of the pickup truck, Alex Vega, revealed that he had violated firearm regulations.  The modified plane fit the profile of a drug smuggling aircraft.  All of the information together was more than enough to give the agents probable cause to suspect the individuals of planning to smuggle drugs and it was proper to request a warrant to place a transponder to trace the Cessna in question.  See Illinois v. Gates, 462 U.S. 213, 76 L.Ed.2d 527, 103 S.Ct. 2317 (1983).

For all the above mentioned reasons the appellant's conviction is

AFFIRMED.