NO. 12-02-00116-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


JAMES CHAMBERS,
§
 APPEAL FROM THE 145TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 NACOGDOCHES COUNTY, TEXAS

 

 James Chambers ("Appellant") appeals his conviction for possession of between fifty and
two thousand pounds of marijuana, for which he was sentenced to imprisonment for thirty-five years
and fined ten thousand dollars. Appellant raises four issues on appeal. We affirm.


Background

 While driving in Nacogdoches County, Texas, Appellant was pulled over for speeding and
failing to signal a lane change by Officer Jason Bridges ("Bridges") of the Deep East Texas Regional
Narcotics Task Force (the "Task Force"). The traffic stop was recorded on the video camera
mounted inside Bridges's patrol vehicle. Upon questioning Appellant, Bridges immediately noted
that Appellant appeared nervous and was shaking. Appellant told Bridges that the car he was driving
was rented by a friend of Appellant's, with whom Appellant had a chance encounter in Houston,
Texas. (1) According to Appellant, his friend had lent the vehicle to Appellant so that Appellant could
transport an alligator back to his home state of Tennessee. At one point, when Bridges returned to
his patrol car, he remarked that he was getting "a bad vibe" from Appellant. (2) 

 Bridges requested a license, warrant and criminal history check on Appellant from the
dispatcher. The dispatcher advised Bridges that the computer was down. Bridges then contacted
the City of Nacogdoches dispatcher with the same request. After explaining to Appellant his duties
as a Task Force officer, Bridges asked for, and received from Appellant, consent to search the trunk
of the vehicle. Upon his search of the trunk, Bridges discovered a duffle bag containing more than
one hundred pounds of marijuana. Bridges then arrested Appellant for possession of marijuana. At
the time Bridges placed Appellant under arrest, his license and criminal history requests remained
unreturned by the City of Nacogdoches dispatcher.

 Appellant was indicted for possession of between fifty and two thousand pounds of
marijuana. Appellant filed a motion to suppress the marijuana arguing that it was obtained in
violation of his constitutional protections against unlawful search and seizure and that it was the
product of Appellant's detention, which was a result of illegal racial profiling. The trial court
overruled Appellant's motion and the case proceeded to trial. During voir dire, the State of Texas
(the "State") exercised a peremptory strike against the only African American veniremember who
would have been on the jury panel and Appellant made a Batson motion. (3) The prosecuting attorney,
explaining his reason for the strike, stated that the veniremember (1) had a relative with a pending
felony charge of unauthorized use of a motor vehicle, (2) appeared disinterested and not engaged in
the voir dire process, and (3) was glaring at other employees of the district attorney's office,
specifically, an assistant district attorney. Appellant requested that the trial court permit him to
examine the stricken veniremember, but the trial court denied Appellant's request. Appellant
proceeded to argument on his Batson motion without calling any witnesses. The trial court
ultimately denied Appellant's motion. 

 During trial, Appellant cross-examined Bridges regarding a Task Force survey concerning
the race of the persons arrested. Bridges testified that between January 1, 2002 and April 2, 2002,
he personally arrested four white males of the twenty-one white males arrested by the Task Force. 
Moreover, Bridges testified that during this same time period, he arrested eight African American
males and one African American female. The record further reflects that during this time, the Task
Force arrested seventeen African American males and four African American females. 

 Later during the proceedings, there was testimony regarding chain of custody with regard to
the marijuana seized from Appellant. According to that testimony, the marijuana was transported
from Nacogdoches, Texas to Conroe, Texas, where it was stored in an evidence locker for forty days. 
Subsequently, the marijuana was transported to the Department of Public Safety Lab in Tyler, Texas. 
The record reflects that the marijuana weighed one hundred twenty-one pounds when it was taken
from Nacogdoches. However, when the evidence was returned from Conroe, it weighed
approximately one hundred sixteen pounds. The evidence was undisputed that while in Conroe, the
boxes containing the marijuana in question were opened and later resealed.

 Following the presentation of evidence and arguments of counsel, the jury found Appellant
guilty as charged and recommended punishment. The trial court sentenced Appellant to thirty-five
years and fined Appellant ten thousand dollars.


Legality of Search and Seizure

 In his first issue, Appellant argues that the trial court erred because it improperly overruled
his motion to suppress because the search of the vehicle violated his protections under the Fourth
Amendment to the United States Constitution. We review a trial court's ruling on a motion to
suppress for abuse of discretion. See Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim.
App.1996); Curry v. State, 965 S.W.2d 32, 33 (Tex. App.-Houston [1st Dist.] 1998, no pet.). In
reviewing the trial court's ruling, we apply a bifurcated standard of review. See Carmouche v. State,
10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Hernandez v. State, 957 S.W.2d 851, 852 (Tex. Crim.
App. 1998). We give almost total deference to the trial court's determination of historical facts,
while conducting a de novo review of the trial court's application of the law to those facts. See
Carmouche, 10 S.W.3d at 327. The trial court is the exclusive finder of fact in a motion to suppress
hearing, and as such, it may choose to believe or disbelieve any or all of any witness's testimony. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). 

 Appellant contends that the search was improper because the grounds for the stop were
without merit inasmuch as the City of Nacogdoches dispatcher had informed Bridges that Appellant
did not have any outstanding warrants. However, Appellant overlooks the fact that (1) the dispatcher
had not provided Bridges with the result of the license and criminal history check on Appellant at
the time of Appellant's arrest, and (2) Appellant was detained for speeding and an improper lane
change, not suspicion of outstanding warrants. From his initial contact with Appellant, Bridges
noted that Appellant appeared nervous and was shaking. Bridges testified that the inconsistencies
in Appellant's story and Appellant's mannerisms indicated to him that Appellant was not being
truthful. Ultimately, Bridges asked for and received consent to search Appellant's trunk.

 A traffic stop is analogous to a temporary investigative detention. See Berkemer v. McCarty,
468 U.S. 420, 439, 104 S. Ct. 3138, 3150, 82 L. Ed. 2d 317 (1984). Such a detention may last no
longer than is necessary to effectuate the purpose of the stop. See Davis v. State, 947 S.W.2d 240,
243-45 (Tex. Crim. App. 1997). Requests for a driver's license or other identification, proof of
insurance, and information regarding ownership of the car and the destination and purpose for the
trip are proper inquiries following a traffic stop. See Davis, 947 S.W.2d at 245 n. 6; Mohmed v.
State, 977 S.W.2d 624, 628 (Tex. App.-Fort Worth 1998, pet. ref'd). To permit these inquiries to
be made with greater safety, a police officer may ask the driver of the stopped car to step out of the
vehicle and onto the side of the road. See Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S. Ct.
330, 333, 54 L. Ed. 2d 331 (1977). Thus, any contention on Appellant's part that Bridges's initial
questioning of him outside the car exceeded the proper scope of the traffic stop is without merit. See
Estrada v. State, 30 S.W.3d 599, 603 (Tex. App.-Austin 2000, no pet.).

 Appellant also contends Bridges did not have a lawful basis for detaining him past the point
of discovering that Appellant had no outstanding warrants. Articulable facts and circumstances that
come to an officer's attention during the course of a routine traffic stop may justify a continued
detention and broader investigation. See Razo v. State, 577 S.W.2d 709, 711 (Tex. Crim. App. 1979);
Mohmed, 977 S.W.2d at 628. Similar to the facts of Estrada, Bridges noted that Appellant was very
nervous, was shaking and made confusing and contradictory statements regarding where he had been
and where he was going. See Estrada, 30 S.W.3d at 603. These specific, articulable facts and the
rational inferences arising from these facts gave Bridges a reasonable basis for suspecting that
Appellant was smuggling drugs. Id. (citing Fields v. State, 932 S.W.2d 97, 105 (Tex. App.-Tyler
1996, pet. ref'd)); Bustamante v. State, 917 S.W.2d 144, 146 (Tex. App.-Waco 1996, no pet.);
Foster v. State, 814 S.W.2d 874, 879 (Tex. App.-Beaumont 1991, pet. ref'd).

 Furthermore, it is an unbroken rule in Texas that an accused may give his consent to a search
and thereby waive irregularities in the search warrant or dispense altogether with the necessity for
one. See Joslin v. State, 305 S.W.2d 351, 352 (Tex. Crim. App. 1957) (citing Davidson v. State, 72
S.W.2d 591, 592 (Tex. Crim. App. 1934)). The State has the burden to demonstrate consent by clear
and convincing evidence. See State v. Ibarra, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997). In the
instant case, that Appellant gave Bridges consent to search the trunk of the vehicle is supported by
both the videotape evidence as well as Bridges's trial testimony, and is uncontested. Therefore, we
hold that the search of Appellant's vehicle was lawful and that in overruling Appellant's motion to
suppress on these grounds, the trial court did not abuse its discretion. Appellant's first issue is
overruled.


Batson Challenge

 In his second issue, Appellant argues that the trial court improperly overruled his Batson
challenge. In order to establish a prima facie case of racial discrimination, three things must be
shown: (1) Appellant is a member of a cognizable racial group; (2) the State used peremptory
challenges to remove members of a minority group from the jury; and (3) these facts, and any other
relevant circumstances, raise an inference that the prosecutor excluded the venirepersons from the
venire because of their race. See Batson v. Kentucky, 476 U.S. at 96, 106 S. Ct. at 1723; Henry v.
State, 729 S.W.2d 732, 734 (Tex. Crim. App. 1987). When the trial court determines that the
appellant has made a prima facie Batson case, the burden shifts to the prosecutor to come forward
with race-neutral reasons for the peremptory strikes. See Shears v. State, 895 S.W.2d 456, 461 (Tex.
App.-Tyler 1995, no pet.). The explanation the State gives justifying the strike does not have to rise
to the level of a challenge for cause, but it must be a clear, specific, and legitimate explanation for
each relevant challenge. See Brooks v. State, 802 S.W.2d 692, 695 (Tex. Crim. App. 1991); see
also Puckett v. Elam, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771, 131 L. Ed. 2d 834 (1995) (the race-neutral explanation articulated by the State need not be persuasive, or even plausible). A reviewing
court is not to concern itself with who served on the jury, but whether the State was racially motivated
in using a peremptory challenge against even one veniremember of discernable race. See Linscomb
v. State, 829 S.W.2d 164, 167 (Tex. Crim. App. 1992). The trial judge cannot merely accept the
specific reasons given by the prosecutor at face value, but must consider whether the prosecutor
contrived the racially neutral explanations to avoid admitting acts of discrimination. See Dennis v.
State, 925 S.W.2d 32, 39-40 (Tex. App.-Tyler 1995, pet. ref'd). Once the prosecutor gives a racially
neutral explanation that can legally support a judgment in the State's favor, he presents a fact issue
that the trial judge can resolve only by assessing the weight and credibility of the evidence. Id. at 40. 
The defendant bears the ultimate burden of proving that the prosecutor exercised the State's
peremptory strikes in a discriminatory fashion. Id. 

 The standard of review of a trial court's decision and finding as to whether a reason given by
a prosecutor is sufficiently race-neutral is reviewable by a "clearly erroneous" standard. See Tennard
v. State, 802 S.W.2d 678, 681 (Tex. Crim. App. 1990); Dennis, 925 S.W.2d at 39. Thus, the
reviewing court should afford great deference to the findings of the trial court. See Robinson v. State,
851 S.W.2d 216, 226 (Tex. Crim. App. 1991); Shears, 895 S.W.2d at 461. The record of both the
voir dire and hearing will be reviewed in a light most favorable to the trial court's ruling. See
Adanandus v. State, 866 S.W.2d 210, 224 (Tex. Crim. App. 1993). In Keeton v. State, 749 S.W. 2d
861 (Tex. Crim. App. 1988), the court of criminal appeals discussed the following nonexclusive list
of factors which weigh against the legitimacy of a race-neutral explanation: (1) the prosecutor's
reason for the peremptory challenge is not related to the facts of the case; (2) there was a lack of
questioning to the challenged juror or a lack of meaningful questions; (3) there was disparate
treatment in that persons with the same or similar characteristics were not struck; (4) there was
disparate examination in that a challenged juror was questioned so as to evoke a certain response
whereas other panel members were not asked the same question; and (5) the prosecutor gives an
explanation based on a group bias where the group trait is not shown to apply specifically to the
challenged juror. See Keeton, 749 S.W.2d at 868. These factors tend to show that the reasons or
explanations given by a prosecutor are merely a sham or a pretext. See Emerson v. State, 851 S.W.2d
269, 273 (Tex. Crim. App. 1993); Keeton, 749 S.W.2d at 868.

 In the case at hand, following Appellant's Batson challenge, the prosecuting attorney stated
that he had exercised a peremptory strike against the veniremember in question because (1) he had
a relative with a pending felony charge of unauthorized use of a motor vehicle, (2) he appeared
disinterested and not engaged in the voir dire process, and (3) he was glaring at other employees of
the district attorney's office, specifically, an assistant district attorney. The reasons set forth by the
prosecuting attorney were sufficiently race-neutral to shift the burden back to Appellant on this issue. 
See Gaines v. State, 811 S.W.2d 245, 250 (Tex. App.-Dallas 1991, pet. ref'd.) (prosecutors may rely
on nonverbal as well as verbal aspects of a veniremember's answers in assessing whether a
veniremember is hostile to the prosecutor in a particular case); Lee v. State, 860 S.W.2d 582, 585
(Tex. App.-Houston [14th Dist.] 1993, pet. ref'd.) (it is permissible to strike a potential juror on the
basis that he has a friend or relative who has been arrested or convicted); United States v. Mixon, 977
F.2d 921, 923 (5th Cir.1992) (glaring at the prosecutor during voir dire is a race-neutral reason).

 It was, therefore, Appellant's burden to prove that the prosecutor exercised the State's
peremptory strikes in a discriminatory fashion. See Dennis, 925 S.W.2d at 40. The record reflects
that Appellant requested that the trial court permit Appellant to examine the stricken venire member,
but that the trial court denied Appellant's request. The record further reflects that Appellant failed
to elicit testimony from any of the prosecuting attorneys, including the assistant district attorney who
was allegedly glared at by the stricken venire member. Appellant proffered questions that he would
have asked the stricken venire member had the trial court permitted such testimony. The proffered
questions related to whether the State's reasons for striking the veniremember were accurate. But we
reiterate that the race-neutral explanation articulated by the State need not be persuasive, or even
plausible, so long as it is not inherently discriminatory. See Puckett, 514 U.S. at 768, 115 S. Ct. at
1771. Moreover, Appellant's proffered questions do not address any of the non-exclusive factors set
forth in Keeton or otherwise raise any factual issue with regard to the prosecutor's intent in striking
the venire member in question. Thus, we conclude that, even had the stricken veniremember testified
in a fashion favorable to Appellant, Appellant failed to carry his burden of proving that the prosecutor
exercised the State's peremptory strikes in a discriminatory fashion. As such, we hold that the trial
court decision to overrule Appellant's Batson challenge was not clearly erroneous. Appellant's
second issue is overruled.


Racial Profiling

 In his third issue, Appellant contends that the trial court erred in overruling his motion to
suppress based on his argument that his detention was a result of racial profiling in violation of Texas
Code of Criminal Procedure articles 2.131-2.137 and 38.23(a). However, the racial profiling statutes
on which Appellant relies were not yet in effect at the time of Appellant's arrest on February 9, 2001. 
See Tex. Code Crim. Proc. Ann. art. 2.131, et seq. (Vernon Supp. 2003) (effective September 1,
2001). Moreover, the only evidence Appellant cites in support of this argument is a survey setting
forth numbers of the arrests made by Bridges of both whites and African Americans and the relation
of these numbers to the total number of arrests made by the Task Force broken down along these
same racial lines. (4) However, the very statute upon which Appellant relies specifically states, "the data
collected as a result of the reporting requirements of this article shall not constitute prima facie
evidence of racial profiling." Tex. Code Crim. Proc. Ann. art. 2.132(c) (Vernon Supp. 2003). As
such, we hold that the trial court did not abuse its discretion in overruling Appellant's motion to
suppress on these grounds. Appellant's third issue is overruled.


Tampering and Alteration of Evidence

 In his fourth issue, Appellant argues that the trial court should not have admitted the marijuana
seized from Appellant into evidence because the evidence weighed less when it was returned to Tyler
from Conroe and because the box containing the marijuana was sealed with tape that could not be
identified. Appellant asserts that these two facts indicate that the evidence had been tampered with
or altered. The authentication or identification requirement "is satisfied by evidence sufficient to
support a finding that the matter in question is what its proponent claims." Tex. R. Evid. 901(a). 
However, absent affirmative evidence of tampering, theoretical breaches do not affect admissibility. 
See Moore v. State, 821 S.W.2d 429, 431 (Tex. App.-Waco 1991, no pet.).

 In the case at hand, Appellant has set forth no affirmative evidence of tampering. In his brief,
Appellant queries, "What was done to this evidence to justify this weight loss? Where did the tape
come from?" Appellant's contentions amount to nothing more than theoretical breaches, and
therefore, cannot affect admissibility of the evidence in question. Id. Moreover, the question of the
weight of the evidence was explained by the testimony of Task Force Officer Jack Carter, who stated 
that marijuana tends to dry out a little bit each day, and that as it dries out, it becomes lighter. Since
Appellant failed to raise any affirmative evidence of tampering, we hold that the trial court committed
no error in admitting the evidence in question. Appellant's fourth issue is overruled.

 Accordingly, we affirm the judgment of the trial court. 



 SAM GRIFFITH 

 Justice



Opinion delivered November 27, 2002.

Panel consisted of Gohmert, Jr., C.J., Worthen, J., and Griffith, J.

















(DO NOT PUBLISH)
1. According to Appellant, he had gone to Houston to visit a relative in the hospital, but had not, in fact,
visited the relative while in Houston.
2. At trial, Bridges, elaborated on his suspicions and testified as follows:

 

 Based on his story, it no where near made sense to me. It was not logical at all. He was very
nervous. Could not stand still. Very evasive in eye contact, which is indicated to me when
someone's lying. His body demeanor showed that he was very nervous. His story - I caught him
in several lies on the side of the road. He was very hesitant upon talking, which means that he was
trying to think of something to say. There was no luggage hardly in the vehicle at all, which is a
very good indicator. And those are the signs to me that indicated that something was wrong.
3. See Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).
4. Appellant also examined witnesses regarding the results of the survey.