**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**January 28, 2004**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-50436
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DOUGLAS JERROD BEMIS, JR., also known as
Douglas Jerrold Bemis, Jr.,

Defendant-Appellant.

--------------------
Appeals from the United States District Court
for the Western District of Texas
USDC No. MO-02-CR-94-1
--------------------

Before SMITH, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Douglas Jerrod Bemis, Jr., appeals his convictions of
conspiracy to possess and aiding and abetting the possession of
marijuana with intent to distribute it, in violation of 21 U.S.C.
§§ 846 and 841(a)(1), and 18 U.S.C. § 2.  We AFFIRM.

At Bemis's trial, Attorney Gary Hill testified that
Bemis asked him to locate a marijuana supplier for Bemis.
Hill pretended to comply, but he informed law enforcement

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

authorities, who set up a sting operation targeting Bemis. Government witnesses testified that Bemis and his codefendant, Gerald Mancus, were arrested after they accepted delivery of 300 pounds of marijuana for which they agreed to pay $120,000, $40,000 upon delivery and $80,000 later.

Bemis testified at trial that he had contacted Attorney Gary Hill in hopes that he would lend Bemis $20,000 to buy some property. When Hill declined to lend Bemis $20,000, Bemis asked Hill if he could introduce him to someone who could sell him 100 pounds of marijuana so he could earn $20,000 in order to buy the property. Hill contacted Bemis and informed him he had found a supplier. Bemis testified that he then contacted Mancus, who offered to put up $40,000 if Bemis would broker a marijuana deal. Bemis's defense was that he wanted to obtain only 100 pounds of marijuana, but that the agents tried to sell him 300 pounds.

Later, Bemis testified that Hill told him he would pay for the other 200 pounds. After the Government objected to this testimony as hearsay, defense counsel argued that it was admissible under the coconspirator exception as provided in FED. R. EVID. 802, actually Rule 801(d)(2)(E). The court sustained the objection and instructed the jury to disregard the testimony.

Bemis contends that he is entitled to reversal because the district court abused its discretion by excluding his testimony that Hill had agreed to buy 200 of the 300 pounds of marijuana involved in this case. Bemis argues that the ruling deprived him

2

of his right to present a meaningful defense, that he had the intent to purchase and possess only 100 pounds of the marijuana.

The district court's ruling was correct because Attorney Hill never was a coconspirator; at all relevant times he cooperated with the law enforcement authorities. A statement is not admissible under the coconspirator exception if it was made by one "who is actually a government agent whose sole purpose is to effect the arrest of the conspirators." United States v. Wilkerson, 469 F.2d 963, 968 (5th Cir. 1972).

Furthermore, if it is assumed that the district court erred by disallowing the contested testimony, any error was harmless in light of the overwhelming evidence of Bemis's guilt of the charged offenses. See FED. R. CRIM. P. 52(a). The evidence was overwhelming that Bemis knowingly took delivery of 300 pounds of marijuana, having agreed to pay $40,000 upon delivery, with the balance payable after he sold the marijuana. There was also ample evidence that he conspired with Mancus, and aided and abetted Mancus in possessing the 300 pounds, which Mancus also bargained for with the agents.

Bemis testified regarding his version of events, and he also admitted in the excluded testimony that he had agreed to possess the additional 200 pounds for his distribution to Hill. Since he was charged with possession with intent to distribute, not ownership, any error in the court's exclusion of this inculpatory testimony was harmless to Bemis. See FED. R. CRIM. P. 52(a).

3

Bemis contends also that the district court reversibly erred by denying his objection to the Government's exercise of peremptory challenges during jury selection, based on Batson v. Kentucky, 476 U.S. 79 (1986). Bemis argues that the Government gave insufficient reasons for peremptorily challenging three jury-panel members, whom he believes to be Hispanic because they have Hispanic surnames. Bemis further argues that the district court erred by not finding that there was a prima facie case of discrimination by the Government, and by failing to strike the entire jury panel.

"The district court's determination whether the prosecutor's strikes are racially motivated is purely factual, and largely turns on an evaluation of the prosecutor's credibility." United States v. Pofahl, 990 F.2d 1456, 1466 (5th Cir. 1993). On review, this court "giv[es] great deference to the trial court's finding that the prosecutor's explanation was credible." United States v. Wallace, 32 F.3d 921, 925 (5th Cir. 1994). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Hernandez v. New York, 500 U.S. 352, 360 (1991).

The prosecutor in Bemis's case offered neutral reasons for his strikes, which do not even suggest a discriminatory intent. Some of his reasons, such as the fact that a member of the venire is unemployed or young and single, have been deemed by this court to be valid neutral explanations. See United States v. Moreno, 878 F.2d 817, 820-21 (5th Cir. 1989); United States v. Munoz, 15 F.3d

4

395, 399-400 (5th Cir. 1994).

Furthermore, if the Government had been intent on challenging Hispanic panel members, it could have exercised its peremptory challenges to eliminate both a Hispanic who was seated on the jury, and a Hispanic panel member who did not serve on the jury because he was the last remaining panel member after the jury was selected. See United States v. Mixon, 977 F.2d 921, 923 (5th Cir. 1992). This also supports the district court's decision that the Government's reasons for striking the panel members were credible.

As this court explained in United States v. Krout, 66 F.3d 1420, 1428-29 (5th Cir. 1995), reasons offered by the prosecutor will be deemed race-neutral by the court unless a discriminatory intent is inherent in his explanation. Because the reasons given by the prosecutor are facially race- and ethnically neutral, with no valid basis for suspecting a discriminatory intent, Bemis's Batson claim lacks merit.

Bemis contends that he is entitled to reversal because the district court erroneously found that he did not make a prima facie showing that the Government discriminated in exercising its peremptory challenges. Since the district court called on the prosecutor to provide race-neutral explanations, however, this court reviews only the district court's findings concerning discrimination, not whether the party made a prima facie case. See Brown v. Kinney Shoe Corp., 237 F.3d 556, 561 (5th Cir. 2001).

5

Bemis asserts conclusionally that he is entitled to reversal because the district court failed to strike the jury panel. By not briefing this claim, Bemis has in effect abandoned it. <u>See</u> <u>Al-Ra'id v. Ingle</u>, 69 F.3d 28, 33 (5th Cir. 1995).

AFFIRMED.