# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-17-00366-CV
---

**D. G. and D. R., III, Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---
### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 281,103-B, HONORABLE JACK WELDON JONES, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

D.G. (Mother) and D.R., III (Father) appeal from the trial court's order terminating their parent-child relationship with their children "Derek," "Dean," and "Daisy."[1] On appeal, both parents contend that the evidence was legally and factually insufficient to support the termination of their parental rights and that the trial court should have granted a motion for mistrial made in connection with a *Batson* challenge. We will affirm the trial court's order terminating Mother's and Father's parental rights.

---

[1] To protect the privacy of the parties, we refer to the children and their parents by their initials or pseudonyms. *See* Tex. Fam. Code § 109.002(d).

## DISCUSSION

**Sufficiency of the Evidence**

To terminate the parent-child relationship, a court must find by clear and convincing evidence that: (1) the parent has committed one of the enumerated statutory grounds for termination and (2) it is in the child's best interest to terminate the parent's rights. Tex. Fam. Code § 161.001(b). Mother and Father contend that the evidence is legally and factually insufficient to support the termination of their parental rights. "The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). When reviewing the legal sufficiency of the evidence in a parental-rights-termination case, we consider all the evidence in the light most favorable to the jury's finding and determine whether a reasonable fact-finder could have formed a firm belief or conviction that its finding was true. *See id.*; *see also In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). When reviewing the factual sufficiency of the evidence, we view all of the evidence in a neutral light and determine whether a reasonable fact-finder could form a firm belief or conviction that a given finding was true. *In re C.H.*, 89 S.W.3d 17, 18–19 (Tex. 2002). We assume that the fact-finder resolved disputed facts in favor of its finding if a reasonable person could do so, and we disregard evidence that a reasonable fact-finder could have disbelieved or found incredible. *In re J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable fact-finder could not have resolved the disputed evidence in favor of its finding and if that disputed evidence is so significant that the fact-finder could not reasonably have formed a firm belief or conviction that its finding was true. *Id.*

2

*Mother*

In her first issue, Mother contends that the evidence was legally and factually insufficient to support the jury's finding that she committed actions corresponding to at least one of the statutory grounds for termination found in subsections (D), (E), (N), and (O). *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (N), (O).[2] Only one ground under section 161.001(b)(1) is necessary to support a judgment in a parental-rights-termination case. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 221 (Tex. App.—Austin 2013, no pet.). Therefore, we will limit our discussion to subsection (E).

Subsection (E) states that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(E). This subsection requires proof of child endangerment, i.e., exposing a child to loss or injury or jeopardizing a child's emotional or physical well-being. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Endangerment does not need to be established as an independent proposition but may be inferred from parental misconduct alone. *Id.* To constitute endangerment under subsection (E), the parent's conduct need not be directed at the child. *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). Conduct may endanger a child even if it does not cause the child to suffer actual injury. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (quoting *Boyd*, 727 S.W.2d at 533).

When determining whether a parent has engaged in an endangering course of conduct, a fact-finder may consider the parent's actions and inactions that occurred both before and after

---

[2] On appeal, Mother has not challenged the jury's best-interest finding.

the child was born. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("[T]he endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage."); *D.M. v. Texas Dep't of Family & Protective Servs.*, No. 03-17-00137-CV, 2017 WL 2628949, at *3 (Tex. App.—Austin June 13, 2017, no pet.) (mem. op.); *In re M.C.*, 482 S.W.3d 675, 685 (Tex. App.—Texarkana 2016, pet. denied) ("The conduct to be examined includes what the parent did both before and after the child was born.") (quotation marks omitted); *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.) (same); *In re S.M.*, 389 S.W.3d 483, 491–92 (Tex. App.—El Paso 2012, no pet.) ("[I]n considering whether a relevant course of conduct has been established, a court properly may consider both actions and inactions occurring both before and after a child's birth."). "A parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *In re E.R.W.*, __ S.W.3d __, No. 14-17-00178-CV, 2017 WL 3879019, at *9 (Tex. App.—Houston [14th Dist.] Sept. 5, 2017, no pet. h.); *see In re L.E.S.*, 471 S.W.3d 915, 924 (Tex. App.—Texarkana 2015, no pet.) (noting that parent's drug use may support termination under subsection (E) and collecting cases); *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) ("Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child.").

Here, the Department presented undisputed evidence that all three of the children at issue in this appeal (as well as another of Mother's children) tested positive for marihuana at birth.

The Department also presented evidence that Mother tested positive for marihuana and hydrocodone multiple times during the pendency of this case. Although Mother also had some negative tests, she missed many of her scheduled tests. In addition, at trial, Mother admitted that she "[a]lways" "took care of [her] children while [she was] under the influence of marijuana," that she did not know whether her marihuana was "laced" with other drugs, that even if it were "laced" with a drug such as "PCP" it would not affect her ability to care for her children, that she had smoked marihuana since she was 18 years old, that she used marihuana "medically," that she "can't wait" to leave Texas so that she can get a prescription for marihuana and obtain it from a pharmacy, and that her marihuana use was "wrong" "[a]ccording to the law" but not according to her "religion" and "beliefs."

The record thus reveals that Mother was unrepentant with respect to her illegal drug use and that she consistently used drugs even while pregnant. Viewing all of the evidence in a neutral light, we conclude that the jury could have reasonably formed a firm belief or conviction that Mother's drug use endangered the children. *See* Tex. Fam. Code § 161.001(b)(1)(E). We further determine that there was no disputed evidence so significant that the jury could not reasonably have formed a firm belief or conviction that its finding was true. Therefore, we conclude that the evidence was legally and factually sufficient to support the termination of Mother's parental rights under subsection (E). Accordingly, we overrule Mother's first issue.

*Father*

The jury found by clear and convincing evidence that Father committed actions corresponding to at least one of the statutory grounds for termination found in subsections (D), (E), (N), and (O). *See id.* § 161.001(b)(1)(D), (E), (N), (O). The jury further found by clear and convincing

5

evidence that termination of Father's rights was in the children's best interest. *See id.* § 161.001(b)(2). In his first issue, Father challenges the legal and factual sufficiency of the evidence supporting the jury's finding that he had satisfied a ground for termination and also challenges the legal and factual sufficiency of the jury's best-interest finding.

To preserve a challenge to the legal sufficiency of evidence in a jury trial, a party must either (1) file a motion for instructed verdict, (2) file a motion for judgment notwithstanding the verdict, (3) object to the submission of the issue to the jury, (4) file a motion to disregard the jury's answer to a vital fact issue, or (5) file a motion for new trial; to preserve a challenge to the factual sufficiency of the evidence in a jury trial, a party must file a motion for new trial. *See Mason v. Texas Dep't of Family & Protective Servs.*, No. 03-11-00205-CV, 2012 WL 1810620, at *7 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op.); *see also* Tex. R. Civ. P. 324(b)(2), (3) ("A point in a motion for new trial is a prerequisite to the following complaints on appeal . . . (2) A complaint of factual insufficiency of the evidence to support a jury finding . . . (3) A complaint that a jury finding is against the overwhelming weight of the evidence . . . ."); *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991) ("A point in a motion for new trial is a prerequisite to complain on appeal that the evidence is factually insufficient to support a jury finding and that a jury finding is against the overwhelming weight of the evidence. 'No evidence' points may be raised by either (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue or (5) a motion for new trial.") (citations and footnote omitted); *In re J.B.*, No. 09-16-00442-CV, 2017 WL 2180682, at *7 (Tex. App.—Beaumont May 18, 2017, no pet.) (mem. op.); *In re A.L.*, 486 S.W.3d 129, 130 (Tex. App.—Texarkana 2016, no pet.); *Key v. Richards*, No. 03-14-00116-CV,

6

2016 WL 240773, at *5 (Tex. App.—Austin Jan. 13, 2016, no pet.) (mem. op.); *In re G.H.*, No. 02-14-00261-CV, 2015 WL 3827703, at *5 (Tex. App.—Fort Worth June 18, 2015, no pet.) (mem. op., en banc); *In re H.D.B.-M.*, No. 10-12-00423-CV, 2013 WL 765699, at *8 (Tex. App.—Waco Feb. 28, 2013, pet. denied) (mem. op.).

Nothing in the record before us indicates that Father filed a motion for new trial. Therefore, Father has not preserved his factual-sufficiency challenges. In addition, nothing in the record before us indicates that Father objected to the submission of the statutory grounds or the best-interest question to the jury or that he ever filed a motion for instructed verdict, a motion for judgment notwithstanding the verdict, or a motion to disregard the jury's answer to a vital fact issue. Therefore, we conclude that Father has not preserved his legal-sufficiency challenges.

Even if Father had preserved his evidentiary-sufficiency challenges, they are without merit. For example, with respect to subsection (E), the State presented evidence that Father: (1) tested positive for cocaine and marihuana during the pendency of this case; (2) missed multiple scheduled drug tests; (3) failed to undergo a court-ordered "nail test" and "UA"; (4) had to be escorted out of a meeting with a Department caseworker after he swore at and threatened her; (5) was arrested during the pendency of this case after breaking the glass of the front door of a convenience store, screaming and cursing at police officers, and resisting arrest for public intoxication; (6) was arrested again about a month later after breaking into a house to see his children, injuring his mother, and then resisting arrest; and (7) had no stable home at the time of trial and was sleeping on a friend's living room floor. *See D.M.*, 2017 WL 2628949, at *2 ("A parent's illegal drug use may constitute endangerment under subsection (E)."); *D.N. v. Texas Dep't of Family & Protective Servs.*,

7

No. 03-15-00658-CV, 2016 WL 1407808, at *2 (Tex. App.—Austin Apr. 8, 2016, no pet.) (mem. op.) ("[D]omestic violence may constitute endangerment, even if the violence is not directed at the child."); *In re B.C.S.*, 479 S.W.3d at 926 ("Evidence of criminal conduct, convictions, and imprisonment and its effect on a parent's life and ability to parent may establish an endangering course of conduct.").[3]  Accordingly, we overrule Father's first issue.

### *Batson* **Challenge**

In each of their second issues, Mother and Father challenge the trial court's decision to deny Mother's counsel's request for a mistrial in connection with a *Batson* challenge.

---

[3]  In his brief, appellate counsel for Father candidly acknowledges this evidence but then concludes, "In spite of that evidence, though, there was still insufficient evidence presented which tended to indicate that [Father] engaged in any specific conduct or knowingly placed the children with persons who engaged in specific conduct which endangered the physical or emotional well-being of the children."  In support of the conclusory statement that the evidence was insufficient to support the jury's finding under subsection (E), counsel does not provide legal argument or cite to authorities or to the record.  *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").  Moreover, later in his brief, Father's counsel discusses the Department's "evidence and concerns that [Father] had issues concerning drug abuse and criminal and violent or volatile disposition" and admits that "the Department presented reasonably sufficient evidence that [Father] represented some emotional or physical danger to the children."  *Cf.* Tex. Fam. Code § 161.001(b)(1)(E) (providing for termination if parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child").  As discussed above, only one ground is needed to support a trial court's termination order.  *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 221 (Tex. App.—Austin 2013, no pet.).  Therefore, independent of the fact that Father's evidentiary-sufficiency complaints were not preserved, any contention that the evidence was insufficient to support the jury's finding that Father committed one of the statutory grounds for termination is groundless.  *See In re Schulman*, 252 S.W.3d 403, 407 (Tex. Crim. App. 2008) (describing *Anders* procedure and explaining that "[t]he attorney's duty to withdraw is based upon his professional and ethical responsibilities as an officer of the court not to burden the judicial system with false claims, frivolous pleadings, or burdensome time demands").

In *Batson v. Kentucky*, the United States Supreme Court held that "racial discrimination in jury selection offends the Equal Protection Clause." *See* 476 U.S. 79, 85 (1986). The Texas Supreme Court has held that "the use of a peremptory challenge to exclude a juror on the basis of race violates the equal protection rights of the excluded juror." *Goode v. Shoukfeh*, 943 S.W.2d 441, 445 (Tex. 1997). In resolving a *Batson* objection to a peremptory challenge, courts use a three-step process. *Id.* In the first step, "the opponent of the peremptory challenge must establish a prima facie case of racial discrimination." *Id.* "During the second step of the process, the burden shifts to the party who has exercised the strike to come forward with a race-neutral explanation." *Id.* "At the third step of the process, the trial court must determine if the party challenging the strike has proven purposeful racial discrimination, and the trial court may believe or not believe the explanation offered by the party who exercised the peremptory challenge." *Id.* at 445–46. We review a trial court's ruling on a *Batson* challenge for an abuse of discretion. *Id.* at 446. We also review a trial court's denial of a motion for mistrial for an abuse of discretion. *See Petroleum Workers Union of the Republic of Mexico v. Gomez*, 503 S.W.3d 9, 35 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Following voir dire, Mother's counsel raised a *Batson* challenge, arguing that the State "excluded every black person on the jury except for one" and that it "had six strikes, five of those strikes are black people." The trial court then went down the list of African American jurors that had been stricken and asked the State to respond to each. When asked about juror number 20, the State responded,

9

Two reasons. First of all, she believes that marijuana is okay. She felt that that was fine. And when asked about that—and, additionally, I watched her nonverbal communication. She was rolling her eyes a lot of times when [the attorney ad litem] was talking, when he was talking about the State and what was in the best interest of the children. I was watching her nonverbal cues. That's what I do when somebody else is talking, is I look at the jurors, look at their head shakes, their nods, what they do, and she was rolling her eyes when she wasn't in favor of the State.

Shortly after the State made this response, Mother's counsel stated, "we're seeing a pattern . . . [of] [t]he State striking blacks." The trial court responded, "I also see the State striking people who think marijuana use is okay." The court did not rule on Mother's objection to juror number 20.

The court and attorneys then discussed other potential jurors, including number 25. The court rejected the State's explanation for the strike of juror number 25 and rescinded the strike. The court then stated, "Now, that—based upon my ruling, then, let's identify who our jurors are." The court read the names and numbers of the jurors, and the list did not include number 20 but did include number 25 and other jurors with higher numbers than 20. The court asked, "Did that seem to be consistent with the Court's rulings and the challenges that were made by the parties in the case?" The prosecutor and the attorney ad litem agreed that the list was consistent with the court's rulings. Mother's counsel then stated, "It is consistent, your Honor. I appreciate it. But I will say that I must further move for a mistrial based on a pattern of discrimination as established by these strikes by the State." The trial court denied the motion for mistrial.

On appeal, Mother and Father complain about the trial court's resolution of the *Batson* challenge with respect to juror number 20. Assuming, without deciding, that both Mother

10

Father preserved this challenge for our review,[4] we cannot conclude that the trial court abused its discretion in refusing to rescind the State's peremptory strike of juror number 20. The prosecutor alleged that the juror "believes that marijuana is okay," and the attorney ad litem added that juror number 20 "was angry" and that the attorney ad litem had made a note about juror number 20 that "had to do with marijuana." Neither of the parents' attorneys contradicted the fact that juror number 20 believed marihuana to be "okay" or that the juror was "rolling her eyes" at the attorney ad litem. When Mother's counsel suggested that the State was "striking blacks," the trial court responded that it saw "the State striking people who think marijuana use is okay." In addition, when the trial court asked Mother's counsel whether there were "any jurors who were not stricken by the Ad litem and by the Petitioner that are white and that indicated that they feel like the use of marijuana is acceptable," neither Mother's counsel nor any other attorney was able to name such a potential juror. Indeed, the attorney ad litem was able to name a white potential juror that he had struck "because she said marijuana wasn't as bad as alcohol." Given that marihuana use was an important issue at trial, we conclude that the trial court could have reasonably determined that juror number 20's views on marihuana, coupled with her "nonverbal cues," constituted a race-neutral explanation for the State's peremptory strike. *See Nieto v. State*, 365 S.W.3d 673, 680 (Tex. Crim. App. 2012) ("We have held that the demeanor of a potential juror is a valid reason to exercise a peremptory strike."); *Davis v. Fisk Elec. Co.*, 268 S.W.3d 508, 518 (Tex. 2008) (stating that

---

[4] We note that nothing in the record before us indicates that Father's counsel ever joined or participated in Mother's *Batson* challenge. We also note that neither Mother nor Father asserts on appeal that they have preserved their *Batson* challenge, instead merely arguing that the trial court abused its discretion "[i]f" or "[a]ssuming" that the issued was preserved.

11

"[p]eremptory strikes may legitimately be based on nonverbal conduct," although the record must indicate the nature of the nonverbal conduct); *see also United States v. Mixon*, 977 F.2d 921, 923 (5th Cir. 1992) (noting that the fact that "Torres glared at the U.S. Attorney during voir dire and this might indicate a certain animosity towards the government" was part of a "race neutral" reason for a peremptory strike).

Because we cannot conclude, based on the record before us, that the trial court abused its discretion in denying Mother's motion for mistrial in connection with her *Batson* challenge, we overrule Mother's and Father's second issue.

## CONCLUSION

We affirm the trial court's order terminating Mother's and Father's parental rights.

_____

Scott K. Field, Justice

Before Justices Puryear, Field, and Bourland

Affirmed

Filed:   October 26, 2017

12