

# IN THE
# TENTH COURT OF APPEALS

No. 10-11-00066-CV

**BENNIE F.L. WARD,**

**Appellant**

**v.**

**BAYLOR UNIVERSITY,**

**Appellee**

### From the 170th District Court
### McLennan County, Texas
### Trial Court No. 2007-4645-4

## MEMORANDUM OPINION

Bennie F.L. Ward, a former professor at Baylor University, appeals from a take-nothing judgment from his claims of employment discrimination against Baylor University. Ward complains that the trial court abused its discretion by denying his *Batson* challenges to the jury and by refusing to require a witness to give salary information of another professor at Baylor. Because we find no reversible error, we affirm the judgment of the trial court.

*Partial Reporter's Record*

We only have a partial reporter's record containing only the voir dire proceedings, the testimony of one witness, Dr. O'Brien, and the surrounding objections and arguments made to the trial court. The court reporter certified that these excerpts were the only portions of the evidence that counsel orally requested to be included in the reporter's record. No written request was ever made. When a party appeals with a partial reporter's record but does not provide a list of points as provided in Texas Rule of Appellate Procedure 34.6(c)(1), we presume the omitted portions are relevant and support the trial court's judgment. *See Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002); *Feldman v. Marks*, 960 S.W.2d 613, 614 (Tex. 1996). Here, our record does not contain a statement of the points or issues to be presented on appeal nor does Ward contend that one has ever been made in his briefing to this Court. We therefore presume the omitted portions support the trial court's judgment.

*Batson challenges*

Ward complains that the trial court erred by not determining the appropriateness of peremptory challenges made by Baylor University individually "in *seriatim*" pursuant to an objection to the challenges based on *Batson v. Kentucky*, which articulated the standard to be used to determine whether strikes were inappropriate based on race. *Batson v. Kentucky*, 476 U.S. 79 (1986). There were originally six African-American members on the jury panel, two of whom were successfully challenged for cause.

Thereafter, Baylor struck all four of the remaining African-American panelists with its peremptory challenges, to which Ward objected.

*Standard of Review*

*Batson* determined that the use of racially motivated peremptory challenges to exclude potential jurors in criminal cases violates due process of law. *Id.*; *see also Brumfield v. Exxon Corp.*, 63 S.W.3d 912, 915 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). The *Batson* rule extends to civil trials. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 618-28, 111 S. Ct. 2077, 114 L. Ed. 2d 660 (1991).

Resolution of a *Batson* challenge is a three-step process: (1) the party challenging the use of a peremptory challenge to strike a potential juror must establish a prima facie case of racial discrimination; (2) the party who exercised the strike must come forward with a race-neutral explanation; and (3) if the striking party does so, the party challenging the strike must prove purposeful racial discrimination. *See Purkett v. Elem*, 514 U.S. 765, 767, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995), *Hernandez v. New York*, 500 U.S. 352, 358-59, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991), *Goode v. Shoukfeh*, 943 S.W.2d 441, 445 (Tex. 1997). We review a trial court's *Batson* ruling for abuse of discretion. *Davis v. Fisk Elec. Co.*, 268 S.W.3d 508, 515 (Tex. 2008).

After Ward's objection, Baylor gave its race neutral reasons for the exercise of each of the four challenges. The first stricken panelist was an MHMR employee who Baylor was concerned would relate to Ward as a victim. Baylor contended that the

second stricken panelist was inattentive, did not follow the questioning by either side's attorneys, and had seen employees reprimanded unfairly at her place of employment which was an issue in the trial regarding Ward. Baylor struck the third panelist because she had quit her job prior to being reprimanded by her employer for what she felt was an unjust purpose and because of a desire to strike those with a history of brief employment or who were then-unemployed. Baylor pointed to another juror who it struck due to brief employment who was white. The fourth stricken panelist assisted union employees with filing employment complaints at her job with the VA.

In response to Baylor's stated reasons, the following exchange took place:

Ward: Your Honor, in one of the Texas *Batson* cases, a Court observed that a defendant striking 83 percent of black panelists and 5.5 percent of non-black panelists was remarkable. Here we have a hundred percent of black panelists and something closer to 15 or 20 percent of non-black panelists.

The common denominator in the explanation for the striking of those four jurors was that they stood up for their rights or other people's rights, which certainly the Court may regard as potentially pretextual of the fact that they are in a protected classification and may have more occasion to raise those issues than others, and in the case of [the fourth juror], in the union position she has.

Trial court: Thank you. Anything else?

Ward: I—no, Your Honor.

Trial court: Okay. I'll grant the motion, order that Baylor re-exercise their strikes. See if you can do that in the next ten minutes.

Thank you.

Baylor: So, Judge, just to make sure, am I not allowed to strike any of those four?

Trial court: No, sir. I just—I just think—

Baylor: Judge—

Trial court: —I think that in a case where we're having a racial discrimination case, I think that it would be blatantly unfair not to have a black person on the jury.

Baylor: Well, Judge, I mean, I—

Trial court: And I don't think those people are all disqualified, and I'll leave it up to you to decide who's not.

Baylor: Well, can—okay. So do I have to keep all—

Trial court: No, sir.

Baylor: I mean, honestly—

Trial court: No, sir.

Baylor: I mean, just so you know, and I understand you've already ruled—

Trial court: Yes, sir.

Baylor: —I would have struck the same people with the same characteristics whether they were—regardless of any color. I mean I—

Trial court: I understand that, but with that case involved, we play a little bit different game with the game—with the rules.

Baylor: Okay. I understand. All right. So—so what you're telling me is that I can strike—that I can continue to strike some but

not all of these?

Trial court: Yes, sir.

Baylor: Okay. Thank you, Your Honor.

Trial court: And if you come back in, and he objects again, we'll do it again.

(Recess)

Trial court: Y'all be seated. Okay. Here's who we have on the jury: No. 1—

Ward: Your Honor?

Trial court: Yes, sir.

Ward: If I may, just from a timing standpoint, with respect to the—did Your Honor get the change?

Trial court: I did.

Ward: I just—as an officer of the Court, I want to say two things.

One is defendants seem to take you purely literally by having one of those jurors be picked. The—that juror, as my notes reflect, was consistent with my earlier statement about these people standing up for themselves or for others, said that she, herself, felt discriminated against.

Also as—before you came into the courtroom and [Baylor's trial counsel] marched into the courtroom, he looked at me, and he said, "That's not right," and then reported the exchange—essentially the exchange of jurors to me and—

Baylor: And—

Ward: —and—and I understand that this is an emotional issue, and the Court can judge the appropriateness of the response to

the Court's denial. I don't know if the Court has dealt with this situation before, but I would just make the observation that Baylor took you literally and no more by picking one and not two or three.

Baylor: And if [Ward's trial counsel] can report my conversation, he ought to complete it. What I told him then was that he knows that that's not why I exercised those strikes, not in those good words.

But, Judge, I do—before you seat the jury, I do need to make an objection for the record.

Baylor, at this point, is being forced by the Court to exercise a strike in a manner that it did not originally choose, and I did articulate race-neutral reasons for the strikes that we— that we executed. We are being forced to take on … that we, otherwise would have used one of our peremptory challenges to strike, and we believe that this is—we believe that this is an error. Regardless of the sheer numbers, the people that we struck originally were struck because of their characteristics and not because of the fact that they were black.

And so to the extent that—so to that extent, I need to object to the Court requiring us to utilize our strikes in that manner, requiring us to take on a juror on the panel that we would have otherwise chosen to strike.

Thank you.

Ward: And plaintiff simply reiterates its grounds of pretext.

Trial court: Okay. Thank you.

I'll deny defendant's objection, over overrule it.

And are we ready to bring in the jury?

(Attorneys nodding heads up and down.)

Ward complains that the trial court erred by not addressing each juror individually "in *seriatim*" regarding the *Batson* complaint and that the trial court's ruling created an erroneous "race quota." Baylor contends that Ward failed to preserve his complaints for purposes of appeal.

In his original brief to this Court, Ward complains that the trial court erred after Baylor had exercised its challenges the first time by not considering each of the challenges individually in determining whether each strike was race-neutral; rather the trial court erroneously created, in essence, a "race quota," which was a violation of Ward's rights. In his reply brief, however, Ward complains that the trial court erred by failing to require Baylor to explain its race-neutral reasons for the second set of strikes after that objection was made. The trial court sustained the first objection, whether erroneously or not. It was then necessary for Ward to object again to the trial court after the second set of strikes, which he arguably did not do. Ward's reply brief argues that Ward is not complaining of any alleged errors from the first *Batson* hearing, but complains of the trial court's failure to conduct a proper *Batson* hearing after the second set of strikes.

We note that Ward did not ask the trial court to address the reasons given for each juror individually at the first hearing and further declined the opportunity to present evidence or to cross-examine Baylor's trial counsel when given the opportunity by the trial court at that time. Further, Ward did not address the individual race-

neutral explanations offered by Baylor to justify its exercise of the strikes in the first hearing, or complain in any other way to the trial court about how the trial court conducted the inquiries in either hearing.

In the second hearing, Ward did not object to the trial court's failure to require a second race-neutral explanation of the justifications for the strikes on the second objection. To the degree that Ward's "observations" can be characterized as an objection to the second set of strikes, it was also necessary to complain of the trial court's erroneous procedure at that time and to seek a ruling from the trial court on his objections in order to preserve that issue for appeal. In order to preserve error for purposes of appeal, the trial court must make a ruling on the objection made by a party. *See* TEX. R. APP. P. 33.1(b).

Ward contends that an objection was not necessary because *Batson* error is a fundamental error and may be raised for the first time on appeal. However, even constitutional complaints, including those of *Batson* violations, may be waived by failing to object at trial. *See Brumfield v. Exxon*, 63 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *see also Williams v. State*, 773 S.W.2d 525, 534-35 (Tex. Crim. App. 1988).

Ultimately, however, the burden is on the party challenging the strikes to prove purposeful racial discrimination. *Goode v. Shoukfeh*, 943 S.W.2d 441, 445 (Tex. 1997). Ward has not argued before the trial court or to this Court any specific reasons why the

race-neutral reasons offered by Baylor prove purposeful racial discrimination. In the first hearing, Ward declined the opportunity to present evidence or cross-examine Baylor's trial counsel. On appeal, Ward does not contend that the race-neutral reasons expressed by Baylor were invalid, untrue, or not supported by the record. It is difficult to tell from the state of the record as to exactly what the trial court determined regarding Baylor's race-neutral reasons because the objection was sustained yet the trial court stated that it was not finding that all of the strikes were disqualified. Ward did not object to this.

Then, after the second set of strikes, the discussion between Baylor, Ward, and the trial court indicate that the race-neutral reasons proffered by Baylor were considered at that time and presumably accepted since the jury was empaneled based on the second set of strikes. Once again, Ward did not seek to disprove those reasons. Even if there had been no procedural default by Ward, the trial court did not abuse its discretion regarding the peremptory challenges. We overrule issue one.

### Exclusion of Evidence

In his second issue, Ward complains that the trial court abused its discretion by refusing to compel a witness to answer a question the witness refused to answer. Dr. O'Brien, a trial witness, was asked the salary information of another professor at Baylor. O'Brien stated that he would not answer unless the trial court required him to because he believed it to be a violation of the law and of Baylor's bylaws. Ward requested the

trial court to order O'Brien to answer, at which time Baylor objected on the basis of relevance because of Ward's failure to establish that the other professor was "similarly situated" to Ward at Baylor. *See Ysleta ISD v. Movarrez*, 177 S.W.3d 915, 917 (Tex. 2005). The trial court sustained Baylor's objection. Ward attempted to rephrase the question to elicit whether or not Ward's base salary was less than the other professor's, which drew the same objection from Baylor and was also sustained. Because we only have O'Brien's testimony and no testimony from other witnesses, including Ward himself due to the partial reporter's record, we are required to presume that the other testimony would support the trial court's judgment. We overrule issue two.

*Conclusion*

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed February 22, 2012
[CV06]