

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ERIC GOMEZ, | § | No. 08-19-00250-CV |
| Appellant, | § | Appeal from the |
| v. | § | 53rd District Court |
| CITY OF AUSTIN, | § | of Travis County, Texas |
| Appellee. | § | (TC# D-1-GN-16-002710) |

## **O P I N I O N**

Appellant, Eric Gomez, appeals the trial court's decision overruling his *Batson*[1] challenge on a peremptory strike exercised by Appellee, City of Austin, at trial.[2] Appellant sued for discrimination based on ethnicity and national origin after Appellee terminated his employment.

During voir dire, Appellant objected to Appellee's use of a peremptory strike against one of the only Hispanic prospective jurors in the strike zone. The trial court overruled Appellant's objection following the three-step *Batson* inquiry. Following trial, in a unanimous verdict, the jury found no discrimination had occurred.

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[2] This case was transferred from the Third Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. § 73.001. We follow the precedent of the Third Court of Appeals to the extent they might conflict with our own. *See* TEX.R.APP.P. 41.3.

In his sole issue, Appellant claims the trial court abused its discretion in overruling his *Batson* challenge. We disagree.

**FACTUAL BACKGROUND**

Appellant sued Appellee for employment discrimination following his termination in January of 2016. At trial, Appellee struck Venire Member 8 using a peremptory strike. Venire Member 8, in her juror information sheet, identified herself as Hispanic-Asian and was raised in Mexico. Appellant objected to Appellee's use of a peremptory strike against Venire Member 8. Appellant claimed that as one of very few Hispanic venire members and having given some answers indicating she was more pro-defense than pro-plaintiff, Appellant believed Appellee struck her because she was Hispanic and from Mexico.

Appellee's counsel responded he was unaware of her country of origin and struck her because she disagreed with a question posed by Appellant's counsel regarding whether some discrimination lawsuits are frivolous. He also stated Venire Member 8 responded she would not require a greater standard of proof than preponderance of the evidence in proving discrimination, Additionally, Appellee maintained she did not agree with the proposition it was hard to believe a Hispanic supervisor would discriminate against a Hispanic employee.

Appellant countered Venire Member 8 had indicated she would require a higher burden of proof to show mental anguish damages and would have difficulty awarding mental anguish damages. He also pointed out, other venire panelists who answered the same as Venire Member 8 on several questions, but were not Hispanic, served on the jury.

The trial court denied Appellant's *Batson* challenge and the strike against Venire Member 8 was upheld. Following the trial, the jury unanimously returned a verdict in favor of Appellee,

2

answering the liability question on discrimination in the negative.

## DISCUSSION

In his sole issue on appeal, Appellant contends the trial court abused its discretion when it overruled his *Batson* challenge as to Venire Member 8. Appellant argues Appellee struck Venire Member 8 based on her Mexican national origin and her race, which she labeled as "Asian-Hispanic" on her information sheet. Appellee counters it provided a race-neutral explanation for the peremptory strike and Appellant failed to meet his burden of showing intentional discrimination.

### *Standard of Review*

We review a trial court's ruling on a *Batson* challenge for an abuse of discretion. *Davis v. Fisk Elec. Co.*, 268 S.W.3d 508, 515 (Tex. 2008). "A trial court abuses its discretion if its decision 'is arbitrary, unreasonable, and without reference to guiding principles.'" *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997)(*citing Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)). As the reviewing court, "we may not substitute our judgment for that of the trial court with respect to resolution of . . . matters committed to the trial court's discretion." *Lucchese Boot Co. v. Licon*, 388 S.W.3d 365, 372 (Tex.App.—El Paso 2012, no pet.). The Texas Supreme Court noted the abuse of discretion standard is "'demanding but not insatiable,'" and although we defer to the trial court's discretion, we are not precluded from undertaking a review of alleged *Batson* errors. *Davis*, 268 S.W.3d at 515-16 (*citing Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)("*Miller-El II*")).

### *Applicable Law*

Generally, parties in civil actions are each allowed to exercise six peremptory strikes to

3

strike potential jurors from the panel without any reason or explanation. TEX.R.CIV.P. 232, 233. However, using peremptory strikes to remove potential jurors based on their race is unconstitutional. *See Batson*, 476 U.S. at 89. "Race," in this context, "encompasses notions of ancestral line and ethnicity." *Wamget v. State*, 67 S.W.3d 851, 857 (Tex.Crim.App. 2001); *see also Salazar v. State*, 795 S.W.2d 187, 193 (Tex.Crim.App. 1990)(Hispanic ethnicity constitutes "race" for purposes of showing cognizable racial group for *Batson* challenge).

Batson challenges are reviewed and resolved by a three-step inquiry. *Batson,* 476 U.S. at 97; *Davis*, 268 S.W.3d at 514 n.4. The first step requires the challenging party to establish a prima facie case of racial discrimination. *Batson*, 476 U.S. at 97; *Davis*, 268 S.W.3d at 514 n.4. In making its prima facie case, the challenging party may look at "the totality of the relevant facts" and draw an inference showing discriminatory purpose. *Batson*, 476 U.S. at 93-94. To satisfy its initial burden, the challenging party "must show that relevant circumstances raise an inference that the [striking party] made a race-based strike." *Jones v. State*, 531 S.W.3d 309, 318 (Tex.App.—Houston [14th Dist.] 2017, pet. ref'd).

If the challenging party makes its prima facie showing, the second step shifts the burden to the striking party to produce a race-neutral explanation for the strike(s). *Batson*, 476 U.S. at 98; *Davis*, 268 S.W.3d at 514 n.4. The reason must be stated as articulately as possible "and stand or fall on the plausibility of the reasons [the attorney] gives." *Miller-El II*, 545 U.S. at 252. However, the race-neutral explanation is merely a burden of production. *Murphy v. Arcos*, 615 S.W.3d 676, 686 (Tex.App.—Dallas 2020, pet. filed)(*citing Peetz v. State*, 180 S.W.3d 755, 758-59 (Tex.App.—Houston [14th Dist.] 2005, no pet.)). "This means that the reason offered need not be 'persuasive or even plausible,' so long as it is clear, reasonably specific, and 'based on something

4

other than the juror's race.'" *Murphy*, 615 S.W.3d at 686 (*citing Purkett v. Elem*, 514 U.S. 765, 768 (1995) *and Goode*, 943 S.W.2d at 445)). The trial court must only determine whether the explanation provided is facially valid. *Purkett*, 514 U.S. at 768.

If the striking party provides a race-neutral explanation, the final step requires the challenging party to prove "purposeful racial discrimination" in light of "'all relevant circumstances[.]'" *Davis*, 268 S.W.3d at 514 n.4; *Miller-El II*, 545 U.S. at 232. Only at the third step does the "persuasiveness of the justification for the challenge become[] relevant." *Davis*, 268 S.W.3d at 514 n.4. "[A]t this stage . . . implausible justifications for striking potential jurors 'may (and probably will) be found [by the trial court] to be pretexts for purposeful discrimination.'" *Id.* (*citing Goode* 943 S.W.2d at 445-46). However, "'the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the [peremptory] strike.'" *Id.* (*citing Goode*, 943 S.W.2d at 445-46).

The Texas Supreme Court in *Davis* considered the five factors outlined by the United States Supreme Court in its decision *Miller-El II* to examine "'all relevant circumstances.'" *Davis*, 268 S.W.3d at 511-512 (*citing Miller-El II*, 545 U.S. at 240). They first analyzed the statistical data of the prosecution's use of peremptory strikes; in other words, what percentage of eligible African-American venire persons that were struck peremptorily. *Id.* at 512 (*citing Miller-El II*, 545 U.S. at 241). The second factor involved a comparative juror analysis, in which the Supreme Court conducted a comparison of the Black venire panelists who were excised by peremptory strikes compared to the White panelists that served on the jury. *Id.* The third factor was the striking-party's decision to use the jury shuffle, which the United States Supreme Court held could "'indicate decisions probably based on race.'" *Id.* (*citing Miller-El II*, 545 U.S. at 253). Fourth, the Supreme

5

Court considered the number and quality of voir dire questions posed to Black versus Non-Black panel members. *Davis*, 268 S.W.3d at 513-14 (*citing Miller-El II*, 545 U.S. at 255). Finally, the court examined the striking-party's history, if any, of striking minority venire persons from juries. *Id.* at 514 (*citing Miller-El II*, 545 U.S. at 263).

### *Analysis*

In this case, Appellant objected to Appellee striking Venire Member 8, stating "[T]here was only one person within the strike zone who is Hispanic descent or had Mexico as their origin[,] that is . . . juror No. 8. . . . So the only reason that we can think that defense would have struck the only person of Mexican origin from the jury, given all the information we have on her, is because of their place of origin, Mexico[.]"[3] Appellant argued Venire Member 8's pro-defense voir dire responses should have made her favorable to Appellee, but instead was peremptorily struck by Appellee. Finally, he pointed out other venire members who responded in similarly to Venire Member 8 were not struck by Appellee. We find Appellant's objection and his reasons for making it raise an inference of racial discrimination, satisfying the first step of a *Batson* objection.

Appellee responded Venire Member 8 was struck because she did *not* agree the pendulum had swung too far in the opposite direction, resulting in frivolous claims of discrimination. Appellee's counsel stated, "[VM8] was also a panelist who did not respond that she would have any sort of problem with a preponderance of the evidence standard implied here." He also argued

---

[3] The Court of Criminal Appeals, citing *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987), distinguished between discrimination based "solely on the country where one was born, which would not be viewed as race discrimination, and discrimination based on one's ancestral line or ethnicity, which would constitute race discrimination[.]" *Wamget*, 67 S.W.3d at 858. Had Appellant invoked solely Venire Member 8's country of origin as the reason for the strike, we are not convinced he would have satisfied his initial burden in step one of the *Batson* challenge process. *See Wamget*, 67 S.W.3d at 859 ("[T]he country of one's birth, standing alone, is race-neutral. While it may be an *indication* of ethnicity, more would be needed."). Here, because Appellant invoked not only her country of origin but her Hispanic ethnicity as well, he adequately established her ethnicity for purposes of *Batson*. *Id.* at 857-58.

she disagreed with the idea it was hard to believe one member of an ethnic group would discriminate against another member of the same ethnic group. Each of these responses favor plaintiff-Appellant and worked against defendant-Appellee. We find this explanation satisfies the burden placed on Appellee to produce a race-neutral explanation for exercising a peremptory strike against Venire Member 8.

The third step of the *Batson* process arguably requires the most scrutiny to ascertain the plausibility of the race-neutral reasons provided by the strike proponent and determine, by totality of the circumstances, whether purposeful discrimination occurred. As the Texas Supreme Court did in *Davis*, we review the five *Miller-El II* factors in examining the totality of relevant circumstances. *Davis*, 268 S.W.3d at 514 n.4; *Miller-El II*, 545 U.S. at 232. Both *Davis* and *Miller-El II* involved discrimination based on a venire person being Black. Since Appellant identified Venire Member 8's Hispanic ethnicity as the basis of Appellee's reason for using a peremptory strike against her, our analysis focuses on Appellee's treatment of Hispanic venire persons compared to non-Hispanic venire persons.

### Factor One: Statistical Data of Appellee's Use of Peremptory Strikes

In considering the first factor, the Texas Supreme Court analyzed statistical data of the prosecution's use of peremptory strikes against eligible African-American venire persons. *Davis*, 268 S.W.3d at 512 (*citing Miller-El II*, 545 U.S. at 241). Turning to the case at hand, we undertake the same analysis for the Hispanics on the venire panel.

Of the entire fifty-six-person venire panel, five potential jurors identified themselves as Hispanic, including Venire Member 8 who identified herself as Hispanic-Asian. Of those five, three were within the zone of eligible jurors, meaning their location within the venire panel offered

7

a reasonable likelihood they would be either chosen or struck for jury placement. Of these three, Appellee struck only Venire Member 8. Appellant struck one of the remaining two, and the third was placed on the jury. Accordingly, Appellee struck one-third of the eligible Hispanic panel members. At first blush and in isolation, this fact might be significant. However, Appellant struck the other third of eligible Hispanic venire persons, and the remaining third served on the jury. Considering Hispanic persons composed approximately nine percent of the panel, it might also appear significant that almost double that figure—sixteen and two-thirds percent—were struck using Appellee's peremptory strikes. The fact remains, Appellant used only one strike out of six against a Hispanic venire person. Contrast the figures here with the analysis in *Davis*. There, Appellee struck eighty-three percent—five out of six—of the African American members of the venire out of twenty-four potential jury members who remained after strikes for cause or by agreement. *Davis*, 268 S.W.3d at 516.

### Factor Two: Comparative Juror Analysis

The second factor is a comparative juror analysis. The *Davis* Supreme Court, for the second factor, compared Black venire panelists who were struck in contrast to White panelists that served on the jury. *Id.* Specifically, where the strike-proponent offered a reason for striking a minority panel member which did not also apply to strike a non-minority panel member, it tended to prove purposeful discrimination. *Id.* at 512.

Here, the original reason offered by Appellee for striking Venire Member 8 was her initial disagreement with the sentiment some currently filed discrimination lawsuits are frivolous. As Appellant points out, she then changed her answer to agree with the statement after receiving clarification on what the question potential jurors were being asked. Appellee urges this Court to

8

focus on Venire Member 8's initial hesitancy to agree with the statement, and her lack of clarity on the issue at the outset. Of the remaining eligible panel members who were not already struck for cause or by agreement, six other venire members, all non-Hispanic, also did not agree with the statement but went on to serve on the jury.

Additionally, Appellee stated it struck Venire Member 8 because she "did not respond that she would have any sort of problem with a preponderance of the evidence standard implied here." Appellee is referring to a question posed to the entire panel by Appellant regarding their burden of proof. According to Appellee, Appellant's framing of the question sought to identify potential jurors who would require a higher burden of proof to show discrimination. In Appellee's view, Venire Member 8's answer favors the plaintiff's case. Venire Member 8 was not among the five venire members who indicated they would require a higher burden of proof from Appellant on his discrimination claim. However, eleven other potential jurors who also did not raise their card in agreement with counsel's statement did not have a peremptory strike used against them and served on the jury. Of these eleven, all but one was non-Hispanic.

Finally, Appellee claims it struck Venire Member 8 for not agreeing it was "hard to believe," albeit not impossible, that one Hispanic person would discriminate against another Hispanic person. In other words, Venire Member 8 believed one Hispanic person could discriminate against another. Appellee's view is Venire Member 8's answer favors the plaintiff's case. When counsel asked the venire panel this question, almost half the members on the panel raised their cards. Of those who did not, like Venire Member 8, six potential jurors—all non-Hispanic—served on the jury.

In summary, Venire Member 8 gave two answers seeming to approve of Appellant's

position. On its face, this appears to support Appellee's reason to want her struck from the pool of potential jurors. However, for each answer given, half a dozen or more other venire members answered in kind and Appellee did not use a peremptory strike against them. In fact, Venire Members 2, 3, 32, and 46 answered identically as Venire Member 8 on all three questions and were not struck. All four of these potential jurors were non-Hispanic.

### Factor Three: Use of the Jury Shuffle

The third factor was the striking-party's decision to use the jury shuffle, which the United States Supreme Court held could "'indicate decisions probably based on race.'" *Davis*, 268 S.W.3d at 513 (*citing Miller-El II*, 545 U.S. at 253). Here, only Appellant requested a jury shuffle. Accordingly, we find this factor does not suggest purposeful discrimination on Appellee's part.

### Factor Four: Quantity and Quality of Questions Posed to Minority Panel Members

Fourth, the Supreme Court considered the number and quality of voir dire questions posed to Black versus Non-Black panel members. *Davis*, 268 S.W.3d at 513-14 (*citing Miller-El II*, 545 U.S. at 255). Here, the Hispanic venire panel members were Venire Members 8, 23, 34, 50, and 56. Other than Venire Member 8, only Venire Members 23 and 34 were within the strike zone. The record does not indicate, nor does Appellant allege, that Appellee targeted Hispanic members of the jury panel with questioning or asked disparate questions to Non-Hispanic venire members compared to Hispanic venire members.

Counsel for Appellee asked a single question to Venire Member 8, which he posed to several Non-Hispanic venire members ahead of her. He asked if Appellant failed to satisfy his burden of proof showing discrimination, whether venire members would still award him money because they liked him as a person. He asked the venire members to respond on a scale of one to

10

ten, with a "one" if they disagreed with an award of damages under such circumstances or a "ten" if they agreed to an award of damages if Appellant did not satisfy his burden on liability. Venire Member 8 indicated she was a "one," meaning she would not agree to award damages if Appellant failed to meet his burden of proof on discrimination. During this questioning, Appellee's questions to the venire members, the record reflects nothing indicates disparate treatment of questioning Hispanic panel members.

Factor four does not tend to show purposeful discrimination by Appellee.

### Factor Five: History of Striking Minority Venire Persons

Finally, the court examined the striking-party's history, if any, of striking minority venire persons from juries. *Davis*, 268 S.W.3d at 514 (*citing Miller-El II*, 545 U.S. at 263). Appellant did not provide any evidence of Appellee having any such history. Accordingly, the fifth factor does not indicate Appellee's purposeful discrimination in striking Venire Member 8.

### Totality of the Relevant Circumstances

Considering the comparative analysis of the other potential jurors' answers, it is notable that four other venire members, none were Hispanic, answered identically to Venire Member 8 and Appellee did not employ peremptory strikes against them. However, of the five *Miller-El II* factors, this is the only factor which could be viewed as discriminatory. However, when considered in totality with the remaining factors, as we are bound to do, we are not convinced to the necessary degree the comparative analysis alone sufficiently proves intentional discrimination by Appellee. We thus do not believe the trial court abused its discretion when it overruled Appellant's *Batson* challenge to Appellee's peremptory strike on Venire Member 8. It appears to us the trial court exercised proper discretion, guided by the law outlined in *Batson*, *Miller-El II*, *Davis*, and their

progeny and ruled reasonably based on their principles. While a different trial judge may have ruled differently based on the same assessment, it is improper for us, as the reviewing court, to substitute our opinion for the trial court's where it did not act arbitrarily, unreasonably, or without reference to guiding principles. *See Lucchese Boot Co.*, 388 S.W.3d at 372. Accordingly, we uphold the ruling by the trial court overruling Appellant's *Batson* challenge.

Appellant's sole issue is overruled.

## CONCLUSION

We conclude, based on the record of the *Miller-El II* factors, the trial court did not abuse its discretion in overruling Appellant's *Batson* challenge as to Venire Member 8.

Having overruled Appellant's sole issue on appeal, we affirm the trial court's judgment.


May 26, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.